James E. MALLEN, and Farmers State Bank, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.

No. 2C 87–3016.

United States District Court, N.D. Iowa, C.D.

Feb. 17, 1987.

On Motion to Alter or Amend March 10, 1987.

On Motion for Stay Pending Appeal March 11, 1987.

Probable Jurisdiction Noted Oct. 19, 1987.
See 108 S.Ct. 256.

James P. McCarthy, Mary E. Curtin, Minneapolis, Minn., David J. Siegrist, Britt, Iowa, for plaintiffs.

Gerald Lamberti, John J. Rubin, Regional Counsel, FDIC, Kansas City, Mo., Asher Schroeder, Asst. U.S. Atty., Sioux City, Iowa, for defendant.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

The Court has before it the Motion for Temporary Restraining Order, and for Preliminary Injunction filed by the Plaintiffs James E. Mallen and the Farmers State Bank, Kanawha, Iowa on February 6, 1987. The Court held oral argument on the Motion on February 10, 1987 at which all parties were represented by counsel. The parties have also submitted evidence in the form of affidavits and exhibits. Since the Court has received input at a hearing and briefs from both sides, the Court considers this on the Motion for Preliminary Injunction. The same is hereby sustained as set out herein, and an Order is entered declaring that the the FDIC's "Notice and Order of Suspension" which had prohibited James Mallen from participating in any manner in the conduct of the affairs of the Farmers State Bank, Kanawha, Iowa is null and void. The FDIC is enjoined from enforcing the "Notice and Order of Suspension and Prohibition" pursuant to 12 U.S.C. Section 1818(g) of the act based on the December 10, 1986 Indictment.

Plaintiffs bring this action challenging the suspension on January 26, 1987 by the Federal Deposit Insurance Corporation (FDIC) of James E. Mallen, the President and Secretary of the Farmers State Bank, and a member of the Board of Directors.

### I. Factual Background

On December 10, 1986, an indictment was returned by the Grand Jury in Cedar Rapids, Iowa charging James E. Mallen in two counts for felonies in connection with his employment as President and as a Director of Plaintiff Farmers State Bank of Kanawha, Iowa. In Count 1 of the Indictment, Mallen is charged with making a false statement to the Farmers State Bank, for the purpose of influencing the actions of the Federal Deposit Insurance Corporation, an alleged violation of 18 U.S.C. Section 1014. Mallen allegedly omitted disclosing in a financial statement submitted on or about January 15, 1982 that he had a financial interest in two other businesses, Mallen, et al., and Elmwood Limited Part-

nership. Conviction of Count 1, a felony, carries a maximum penalty of two (2) years imprisonment and a $5,000 fine.

In Count 2 of the indictment, Mallen is charged with making a false statement to a federal agency in violation of 18 U.S.C. Section 1001. Mallen allegedly failed to disclose on a Bank Officer's Questionnaire form submitted to the FDIC on or about November 22, 1982 that accomodation loans were made to the following individuals, Carl Martin, dated November 13, 1981; William Dahl, Carl Martin, and Robert and William Shipman, dated February 26, 1982; and Robert and William Shipman, dated May 17, 1982. Conviction of Count 2, a felony, carries a maximum penalty of five (5) years imprisonment and a $5,000 fine.

On January 26, 1987, James Mallen was served notice that the Federal Deposit Insurance Corporation (FDIC) had suspended him pursuant to 12 U.S.C. Section 1818(g) from further service or participation in the conduct of the affairs of the Bank. (Exhibit 2 to Affidavit of James P. McCarthy). The "Notice and Order of Suspension and Prohibition" was dated January 20, 1987 and was effective by its terms upon service of the Notice. The Notice is signed by Hoyle G. Robinson, Executive Secretary of the Federal Deposit Insurance Corporation. The Notice relies on the fact an indictment (Exhibit 1 to McCarthy Affidavit) alleging crimes involving dishonesty or breach of trust had been filed against Mallen, and in pertinent part the notice states:

> It further appearing that continued service or participation by Respondent in the conduct of the affairs of the Bank *may pose a threat to the interests of the Bank's depositors or may threaten to impair public confidence in the Bank.*

There are no written reasons supporting the above "finding". This finding is merely a recitation of the statutory language which language establishes the minimal findings required for suspension under 12 U.S.C. Section 1818(g) where an indictment has been filed against a bank officer of an FDIC insured bank. *See* 12 U.S.C. Section 1818(g)(1); 12 CFR Section 308.57.

Neither Mr. Mallen or the Farmers State Bank were given an opportunity to present any evidence or argument under 12 U.S.C. Section 1818(g) to the FDIC before the issuance of the suspension.[1] The lack of a pre-suspension hearing is consistent with the statutory scheme under Section 1818(g), and Section 308 of the Code of Federal Regulations.

On January 30, 1987, plaintiff's Attorney Mr. McCarthy wrote to Hoyle L. Robinson, Executive Secretary of the FDIC demanding an immediate administrative hearing under 12 U.S.C. Section 1818(g) with both oral testimony and written evidence. (Exhibit 4 to McCarthy Affidavit).

Regional Counsel initially took the position that the hearing should simply be oral argument on written submissions to be held no earlier than February 25, 1987, in reliance on Section 1818(g)(3) which says that the FDIC may take up to 30 days to set a post-suspension hearing. (Exhibit 6 attached to McCarthy Affidavit). The parties have informed the Court that a post-suspension hearing has now been set for Wednesday, February 18, 1987. It is not clear whether oral evidence would be permitted, since denying permission to present oral evidence is in the discretion of the hearing officer as set out in the FDIC's rules, which state:

> At the discretion of the presiding officer witnesses may be presented within specified time limits, provided that a list of witnesses is furnished to the presiding officer prior to the hearing.

12 CFR Section 308.61(e). After the hearing, the hearing officer must make a recommendation, where possible, to the Executive Board within ten days after the record is closed. 12 CFR Section 1261(h). The record "shall remain open for 5 business days following the hearing for the parties to make additional submissions to

---

1. In September and October 1986, a two week administrative hearing concerning whether or not to suspend Mallen was held pursuant to 12 U.S.C. Section 1818(e). No result in the subsection (e) hearing was reached. The presiding administrative law judge recused himself before ruling.

the record. The record shall thereafter be closed." 12 CFR Section 308.61(g). Under 12 U.S.C. Section 1818(g)(3), the Executive Board can take up to 60 days from the date of the hearing to rule on whether the suspension will be continued, terminated, or otherwise modified. The FDIC's regulations purport to lengthen this time by an additional five days, representing the five day period after the hearing during which the record remains open. Thus, under the regulations, one could be forced to wait up to 95 days before a post-suspension disposition. The affected individual then has up to ten days to petition for reconsideration. 12 CFR Section 308.63.

Under the Speedy Trial Act, 18 U.S.C. Section 3161(c)(1), not including "excludable time", the trial of a criminal defendant must start within 70 days of the filing date and making public of an indictment, or from the date the defendant first appears before a judicial officer of the court, whichever date last occurs.

As mentioned above, under Section 1818(g)(3), and the FDIC's regulations, the agency could delay a disposition for up to 95 days. Ninety-five days is longer than the Speedy Trial deadline for the parallel criminal case. The administrative hearing is set for February 18, 1987. The trial of Mallen's criminal case is set for March 16, 1987. As applied in this case, the subsection (g) post-suspension process could take longer to conclude with a disposition than the criminal proceedings. Following its own regulations, the FDIC could delay ruling on the merits of the Mallen's suspension until April 24, 1987. By that time the criminal trial will be completed. If Mallen is found *not guilty*, the FDIC would no longer have a suspension remedy under Section 1818(g) since there no longer would be a pending indictment. If no disposition

on the administrative hearing is reached before the criminal trial, the purpose of the hearing may become moot. The FDIC may still have an immediate suspension remedy under Section 1818(e) if in the opinion of the FDIC Mallen violated a law, rule, or regulation, or has engaged or participated in any unsafe or unsound practice in connection with the bank, or has breached a fiduciary duty under certain circumstances prescribed in Section 1818(e)(4).[2] If Mallen is found *guilty*, the purpose of the hearing becomes moot because according to the FDIC's lawyers, the FDIC will not permit a convicted person to hold a position as officer or director of an FDIC insured bank without prior FDIC approval. The bottom line is that the Section 1818(g) post-suspension hearing provided by the FDIC is meaningless, or nearly so, if the Executive Board of the FDIC postpones its disposition as the statute and its rules allow.

## II. Discussion

The plaintiffs challenge the post-suspension process on the basis that its insufficiencies violate their rights to procedural due process of law under the Fifth Amendment to the United States Constitution. They argue that 12 U.S.C. Section 1818(g) is unconstitutional because it it does not assure them of an opportunity to present oral testimony, does not assure them of a prompt disposition, and does not permit judicial review. The Court finds that the statute, and rules enacted thereunder, do not provide for a full hearing permitting oral evidence, and a prompt disposition. For these reasons, based on the record made thus far, the Court would find that 12 U.S.C. Section 1818(g) is unconstitutional. The Court does not reach the plaintiffs' contention that Section 1818(g) is also constitutionally infirm because it does not provide for judicial review.[3]

2. However, there are protections in Section 1818(e)(4) actions not found in Section 1818(g) actions. Section 1818(e)(4) refers to Section 1818(f) which provides that the injured party may petition to the United States District Court within ten days for a stay of the suspension order pending completion of the administrative process.

3. The Court does not feel the briefing on the issue of judicial review was sufficiently complete to render a fair ruling. The Court concludes that it is unnecessary to reach this issue in view of its determination that the statute is unconstitutional for the other reasons mentioned above. The Court notes that while the statute does not provide for judicial review of the agency's action, a federal district court may have jurisdiction to review the decision of the

Whether a preliminary injunction should issue involves the consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury granting the injunction will inflict on other parties litigant; (3) the probability of success on the merits; and (4) the public interest. *Dataphase v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The Court finds that each of these factors weighs in favor of granting preliminary injunctive relief.

■ Regarding the first factor, the Eighth Circuit has held that the deprivation of a fundamental constitutional right would support the finding of irreparable injury. *Planned Parenthood v. Citizens for Community Action*, 558 F.2d 861, 867 (8th Cir. 1977); *see* 11 C. Wright and A. Miller, *Federal Practice and Procedure* Section 2948 at 440 (1973). The Court finds that there is a threat of irreparable harm based on the threatened violation of the fundamental constitutional right to procedural due process. For the reasons set out below, the Court also finds that the remaining factors for entry of an injunction are met. The discussion below concerning procedural due process does not express this Court's final opinion on the procedural due process issue. The ruling below that Section 1818(g) does not accord with procedural due process is premised on the record before the Court at this time. It is not intended to express a final view on the merits of the issue.

■ Regarding the second factor, the Court finds that particularly grave consequences could result to the plaintiff Mallen's property interests, since the FDIC has taken away his rights to participate in the bank, and he is not only president and a director, but has a large ownership interest in the bank. On the other hand, the Court recognizes the FDIC's duty to ensure the integrity of the banking system. However, the suspension of bank officers may only be done in constitutionally permissible ways. Since based on the record thus far,

this Court would find that Section 1818(g) does not provide constitutionally adequate post-suspension proceedings, the balance of harm from not granting an injunction would fall on Mallen. The harm to the FDIC would be slight because the FDIC may have alternative statutory remedies for seeking the suspension of Mallen.

The discussion that follows focuses on the final two factors, probability of success on the merits, and the public interest.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments." *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Before the Court can determine whether any process is due, the Court must determine whether the interest at stake is a constitutionally protected liberty or property interest. The Court finds that there is a constitutionally protected property interest at stake for both plaintiffs based on the facts that follow.

■ James Mallen is the President of the Farmers State Bank, Kanawha, Iowa. He is the largest stock holder in Kanawha Investment Holding Company which is a one bank holding company owning 92% of the Farmers State Bank corporate stock. He is a member of the Board of Directors of the holding company and the bank. He holds the offices of President and Secretary of the Bank. Mallen holds the offices of President and Secretary of the holding company. He has held these offices since 1976.

The Farmers State Bank is a small agricultural bank in a town of 750 people with assets of $18 million. As Bank President Mallen is one of three loan officers and supervises all employees. Mallen's removal from the Bank could cause an extreme hardship on the bank. It is an ongoing business that requires important business decisions be made daily regarding exten-

agency if it is alleged the decision violates substantive due process. *See eg., Littlefield v. City of Afton*, 785 F.2d 596, 608 (8th Cir.1986);

*Williams v. St. Louis*, 783 F.2d 114, 118 (8th Cir.1986).

sions of credit, collection of problem loans, and investment of bank funds. It would appear that Mallen's role in the day-to-day operations and decision making for the bank was pivotal.

On these facts, the Court is persuaded that both Mallen and the Bank have property interests entitled to protection under the due process clause regarding Mallen's continued employment. *Feinberg v. Federal Deposit Insurance Corp.*, 522 F.2d 1335, 1340 (D.C.Cir.1975). (Property interests include a person's salary and the right to vote his or her stock).

Having concluded that the plaintiffs have a property interest protected under the due process clause, the Court turns to the more difficult question of what process is due. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). In *Mathews*, the Court stated that "identification of the specific dictates of due process generally requires consideration of three distinct factors:"

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. In *Mathews*, the Court analyzed these factors in relation to what predeprivation process was due. Generally, *before* the Government deprives a party of a constitutionally protected interest, it must provide a pre-deprivation hearing, if practicable. *Westborough Mall, Inc. v. City of Cape Girardeau*, 794 F.2d 330, 337 (8th Cir.1986). Courts, however, recognize two narrow exceptions to the general rule. *Moore v. Warwick Public School Dist. No. 29*, 794 F.2d 322, 327 (8th

Cir.1986). The first exception to the rule that some type of pre-deprivation process is necessary applies in those situations requiring quick action by the State when there is a compelling or overriding state interest in a summary adjudication. *See e.g., Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). The second situation is where the deprivation is the result of a "random and unauthorized" act by a state employee not the result of some established state procedure where it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation. *See e.g. Paratt v. Taylor*, 451 U.S. 527, 536–44, 101 S.Ct. 1908, 1913–17, 68 L.Ed.2d 420 (1981); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982).

■ The FDIC delayed its suspension of Mallen until one month and one-half after the filing of the indictment. The suspension of Mallen cannot be termed swift. There may be some question concerning whether pre-deprivation process was entirely impractical in this case. However, to the extent plaintiffs argue that the FDIC acted unconstitutionally in not providing pre-deprivation procedures, the Court rejects plaintiffs' position because they simply have not met their burden on this issue. The Court is persuaded that this case falls under the first exception to cases in which pre-deprivation hearings are impractical since in cases such as this there generally is a compelling interest in a summary adjudication.

The Court turns next to the question of whether the post-deprivation process is adequate.[4] The Court concludes that the post-deprivation process is inadequate since there is no opportunity to be heard at a meaningful time, in a meaningful manner. *Mathews, supra*, 424 U.S. at 333, 96 S.Ct. at 902. This Court's analysis of the three factors of *Mathews* set out above would be the same as the Court in *Feinberg, supra*, 420 F.Supp. at 119–21, except with regard to the type of hearing that would be re-

---

**4.** The question of whether the post-deprivation process under subsection 8(g) is adequate is placed at issue in paragraph 24 of the plaintiff's complaint.

quired, and the Court will not repeat in full the analysis applied there.

■ In *Feinberg,* the predecessor to Section 1818(g) was found to be constitutionally infirm by a three judge district court panel since it did not provide for an "immediate" post-deprivation hearing. *Feinberg, supra,* 420 F.Supp. at 121. Subsequently, section (g) was amended in 1978, adding subsection (g)(3) to provide for a post-suspension hearing as set out previously in this Order. Central to the reasoning in *Feinberg* was the following:

> The criminal trial is hardly the proper or timely hearing for the deprivation at issue. Despite the Speedy Trial Act, 18 U.S.C. Section 3162 *et seq.* (Supp.1976), the interim between indictment and trial is sufficient time within which plaintiff's interest could be permanently and irreparably impaired.

420 F.Supp. at 118. Of further importance to the Court in *Feinberg* was the fact that the criminal case would not resolve the issues involved in the decision to suspend. Specifically, the criminal trial would not resolve the issues under Section 1818(g) of whether the crime is one involving dishonesty, and whether the officer or director may pose a threat to the bank, or impair public confidence in the bank. Indeed, plaintiffs contend that the bank and its depositors would be more threatened in Mallen's absence.

The new administrative remedy provided by Congress is a toothless remedy for the plaintiffs since the agency can postpone a disposition until after the criminal trial has concluded. It is a remedy only if the agency chooses for it to be a remedy. This clearly was not the intent of the Court in *Feinberg.* 420 F.Supp. at 118. The constitutional process due in any particular situation cannot be exercised at the choice of the government. The process due is a matter of federal constitutional law, and cannot be diminished by the fact a statute sets forth its own procedures that it deems adequate for determining the preconditions to adverse action. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

The post-suspension process in the amended subsection (g)(3) is constitutionally inadequate because it does not contemplate a "prompt" disposition. This case is analogous to *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). In *Barry,* a horse trainer's license was suspended under a New York statute because post-race results on his horse revealed the presence of drugs. No presuspension hearing was held, nor did the Supreme Court find that the same was due under the Due Process Clause given the State's compelling interest in insuring the integrity of horse racing. However, the Court concluded that the post-suspension procedures provided for by statute violated due process because the statute did not provide for a "prompt" hearing and final disposition on the merits either as drafted or as applied. There was no provision for when the hearing should be held, and a ruling was not required until 30 days after the hearing. The Supreme Court stated in pertinent part:

> Here, the provision for an administrative hearing, neither on its face nor as applied in this case, assured a *prompt proceeding and prompt disposition* of the outstanding issues between Barchi and the State. Indeed, insofar as the statutory requirements are concerned, it is as likely as not that Barchi and others subject to relatively brief suspensions would have no opportunity to put the State to its proof *until they have suffered the full penalty imposed.* Yet, it is possible that Barchi's horse may not have been drugged and Barchi may not have been at fault at all. Once suspension has been imposed, the trainer's interest in a speedy resolution of the controversy becomes paramount, it seems to us. We also discern little or no state interest, and the State has suggested none, in an appreciable delay in going forward with a *full* hearing.

443 U.S. at 66, 99 S.Ct. at 2650. (emphasis supplied). Later, in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Court held that a nine month delay in the

final disposition of a security guard's post-termination hearing was not unconstitutional. However, in *Loudermill*, the plaintiff had a pre-termination hearing, and the delay in the post-termination process was on account of the thoroughness of the process. The interest in speedy resolution here is greater than in *Loudermill*, since the plaintiff here has not had a pre-termination ruling.[5]

The Court finds Judge Bechtle's recent views in an analagous situation involving the "emergency suspension" of an attorney from private practice to be particularly apt here:

> [T]he grave consequences that justify the promulgation and exercise of ... [an emergency suspension] must carry over to the disposition side of the fulcrum to assure a constitutionally prompt final decision. The Fourteenth Amendment to the United States Constitution will not allow a disciplinary system charged with adjudicating and punishing professional wrongdoing to fiddle, while constitutionally protected property interests burn on the pyre of accusation.

*Gershenfeld v. Justices of the Supreme Court of Pa.*, 641 F.Supp. 1419, 1427 (E.D. Pa.1986).

■ The statute here is also infirm because it fails to provide for a hearing at which oral evidence can be presented. In *Feinberg*, the Court contemplated that a hearing that would pass due process even if it did not require an opportunity for oral evidence. In *Feinberg*, the Court stated:

> While the hearing need not be a trial-type hearing, notice, the opportunity to be represented by counsel, for written submissions, and for oral argument, appear mandated by the circumstances.... As to the presentation of live evidence,

the "nature of the relevant inquiry", 424 U.S. 343, 96 S.Ct. at 907, does not seem to require any more than written submission. However, oral argument would be necessary.

However, the scope of the hearing was not among the issues squarely presented to the Court in *Feinberg*. The Court in footnote 24 noted:

> Plaintiff's counsel in oral argument conceded that a trial-type hearing would not be required under these circumstances. Defendants did not discuss what would be the minimal due process requirements under the circumstances, choosing to rest on their argument that no hearing is required by the Constitution.

(*Id.* at 120, n. 24). The plaintiff here urges that an evidentiary hearing at which he could present oral testimony is required. This Court agrees that limited oral evidence should be allowed, but the FDIC's rules do not require it, placing the decision on whether to receive oral testimony solely in the discretion of the hearing officer. 12 CFR Section 308.61(e).[6] The Court in *Feinberg* relied on *Mathews v. Eldridge*, 424 U.S. at 343, 96 S.Ct. at 907 in concluding that oral testimony at a post-suspension hearing could be excluded. However, the issue in *Mathews v. Eldridge* concerned what *pre-termination* process was due, and the Court concluded only that an evidentiary hearing was not required *before* termination of disability benefits. 424 U.S. at 349, 96 S.Ct. at 909. An evidentiary hearing was, however, required by statute *after* benefits were terminated, and there was provision for subsequent judicial review. In *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Court held that dismissal of a federal employee required pre-termination notice of

---

5. For further authority that the Due Process Clause requires a prompt hearing *and* final disposition *see Gershenfeld v. Justices of the Supreme Court of Pa.*, 641 F.Supp. 1419 (E.D.Pa. 1986), and cases cited therein at p. 1425. *See also Martell v. Mauzy*, 511 F.Supp. 729, 741 (N.D.Ill.1981) (120 days to conclude post-deprivation review was too long under circumstances).

6. The parties filed affidavits following the hearing that indicate the hearing officer is considering allowing the parties to present evidence. However, the FDIC has not been able to ensure the Court what type of hearing would be held, presumably because the federal regulations rest sole discretion concerning whether oral evidence will be allowed in the hearing officer. The Court therefore must address the constitutional issue concerning whether oral evidence should be allowed in a post-suspension hearing.

the action sought, a copy of the charge, reasonable time for filing a written response, and an opportunity for an oral appearance. Following dismissal, an evidentiary hearing was provided. 416 U.S. at 142–46, 94 S.Ct. at 1638–41.

The Court is persuaded that at some point, the plaintiff in a case such as this should have an opportunity to present live witnesses. This is particularly true since public confidence in the bank may be undermined by the suspension of the president. This might be particularly true in a small town such as Kanawha, Iowa where the bank's customers are likely to be more familiar with the management of the bank. It would seem that a process that includes the presentation of live testimony and findings by the agency would insure that public confidence would not be eroded. The magnitude of the public interest weighs in favor of an evidentiary hearing. Such a hearing need not be a formal trial type hearing following the rules of evidence. A hearing limited to written submissions and oral argument as described in 12 CFR Section 308.61 could pass constitutional muster if it provided for a sufficiently prompt resolution and if an adverse ruling was followed by a hearing at which oral evidence could be presented. However, neither the Code of Federal Regulations, nor the statute provide for a prompt resolution of such a hearing, nor do they provide for a later opportunity to present live testimony.

The FDIC has set forth absolutely no reason justifying the appreciable delay existing in the present statute, nor has it set forth any persuasive reasons concerning why denial of the opportunity to present evidence is in the sole discretion of a hearing officer appointed by the Executive Board of the FDIC. There is no indication in the record that a prompt resolution of these matters would pose any significant administrative burden on the FDIC. Indeed, the Court in *Feinberg* noted that "the costs of providing the incidents of due process would not be significant since there are simply not many Section 1818(g)(1) cases." 420 F.Supp. at 119. Balanced against the administrative cost, is the important public interest in a sound banking system. The results of a suspension of a ten year president at a small bank in some cases may indeed be more catastrophic to the public confidence than his continued employment in spite of a pending indictment.

The FDIC relies on *First Nat. Bank of Grayson v. Conover*, 715 F.2d 234 (6th Cir.1983) for its contention that Section 1818(g)(1) is constitutional. In *Grayson*, regarding Section 1818(g) the Sixth Circuit stated:

[T]he statutory scheme involved in the administration of Banks by the Comptroller, the situation involved in this case, affords a full and fair opportunity for a Bank to respond and be heard within a reasonable time and that due process rights are adequately afforded and protected.

715 F.2d at 237. *Grayson*, however, never confronted in its opinion the issue of whether the time for *disposition*, in contrast to the time for hearing, under Section 1818(g)(3) was sufficiently prompt, and this Court concludes that the possible disposition time is not sufficiently prompt. Indeed, in *Grayson*, the Comptroller had offered in writing to convene a post-suspension hearing within three to five working days, with an oral decision to be rendered within fifteen days after conclusion and a written decision within thirty days. 715 F.2d at 235. Thus, the timliness issue that arises in the instant case never arose in *Grayson*. The timeliness issue in this Court's opinion should be controlled by the reasoning previously quoted herein from *Feinberg, supra*, 420 F.Supp. 118, and *Barchi, supra*, 443 U.S. at 66, 99 S.Ct. at 2650. *See* pp. 658 and 659–60 of this Court's Order.

The Court notes that the FDIC has raised certain jurisdictional arguments, contending that this Court has no jurisdiction to review the suspension order. *citing Grayson, supra*, 715 F.2d at 236–37. However, it is not contended that the Court has no jurisdiction to review the constitutionality of the statutory scheme. The Court concludes that it does have jurisdiction over

the constitutional issues under 28 U.S.C. Section 1331.

This Court has been persuaded that it must approach this problem on strict legal issues. The Court is not unmindful of the serious responsibilities placed on the FDIC to properly oversee the nation's banks. The Court is also persuaded that many would conclude that any banker in this situation would be acting more responsibly if he voluntarily withdrew from active participation in the bank until the criminal trial was completed, despite the fact that a defendant in a criminal case is presumed to be innocent. Nothing said in this ruling should in any way be presumed to have any impact on the criminal action facing the Plaintiff Mallen.

Justice Stevens has said:

The constitutional duty to provide a fair procedure gives the citizen the opportunity to try to prevent the deprivation from happening, but the deprivation itself does not necessarily reflect any "abuse" of state power.

*Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 678, 88 L.Ed.2d 662 (1986) (Justice Stevens concurring). This Court expresses no opinion on the merits of the suspension. The Court concludes only that the post-suspension procedures provided by the statute, based on the record made thus far, violate due process. A preliminary injunction is issued enjoining enforcement of the FDIC's "Notice and Order of Suspension" which had prohibited James Mallen from participating in any manner in the conduct of the affairs of the Farmers State Bank, Kanawha, Iowa. The Court expresses no opinion on whether the FDIC can proceed on the facts here toward suspension of Plaintiff Mallen under 12 U.S.C. Section 1818(e) or any other section.

IT IS THEREFORE ORDERED that the FDIC's "Notice and Order of Suspension" served on plaintiff James Mallen on January 26, 1987, is hereby declared to be null and void.

IT IS FURTHER ORDERED that the FDIC is enjoined from enforcing the "No-

tice and Order of Suspension and Prohibition" pursuant to 12 U.S.C. Section 1818(g) served on James Mallen January 26, 1987.

## ON MOTION TO ALTER OR AMEND

The Court has before it the defendant's Motion to Alter or Amend Judgment filed February 27, 1987. The Court held a hearing on the Motion March 6, 1987 at which all parties were represented by counsel. After fully considering the arguments of counsel, the Court denies the defendant's motion.

### I.

On February 17, 1987, this Court entered an Order declaring the "Notice and Order of Suspension" served on James Mallen January 26, 1987 to be null and void. To remedy the constitutional infirmities [1] of 12 U.S.C. Section 1818(g), the Court enjoined the FDIC from enforcing its "Notice and Order of Suspension" served on James Mallen. The Court found that the statute and rules thereunder did not provide for a *prompt post-suspension hearing and prompt disposition* as required by the Due Process Clause of the Fifth Amendment to the United States Constitution; the Court further found that the statute and rules were unconstitutional because they place sole discretion in the FDIC concerning whether a suspended bank officer would be allowed to present oral evidence at a post-suspension hearing.

The Federal Deposit Insurance Corporation (FDIC) now requests that this Court alter the relief that it ordered. The FDIC proposed that it could hold a post-suspension hearing under 12 U.S.C. Section 1818(g) on March 9, 1987; with an oral disposition within 15 days (March 26, 1987); and written disposition within 30 days (April 8, 1987). The Court finds that this proposed schedule suffers from the same difficulties that prompted this Court's decision of February 17, 1987. Mallen's criminal trial is set for March 16, 1987, and it is estimated that it will last one week. The

---

**1.** The Court's ruling was on a motion for preliminary injunction, and based only on the record that had been made to the date of the preliminary injunction hearing.

FDIC's disposition concerning the suspension under this proposed schedule would be entered only after Mallen has "suffered the full penalty imposed" by the suspension. This procedure does not offer a sufficiently prompt process as required under *Barry v. Barchi,* 443 U.S. 55, 66, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979).

In *Barchi,* the full penalty that was imposed was a fifteen day suspension of a horse trainer by the state agency regulating horse racing. The horse trainer in the *Barchi* case had no opportunity for a disposition before he served the full fifteen day suspension. As Justice Brennan observed in his concurring opinion in *Barchi,* "To be meaningful, an opportunity for a full hearing *and determination* must be afforded at least at a time when the potentially irreparable and substantial harm caused by a suspension can still be avoided—*i.e.,* either before or immediately after suspension." 443 U.S. 74, 99 S.Ct. at 2654 (Brennan, J., concurring in part). The defendant's proposed schedule for disposition in this case would not provide Mallen with a meaningful opportunity for full hearing and determination since the result in his criminal trial will have been dispositive on the Section 1818(g) issues, before the FDIC's disposition is entered. Under the FDIC's proposed schedule, Mallen would incur the full penalty imposed prior to receiving a disposition, just as the horse trainer incurred in *Barchi.*

At the hearing, the FDIC cited *Laurido v. Simon,* 489 F.Supp. 1169 (S.D.N.Y.1980) to support its position that the Court has authority to order an agency to shorten the deadlines for post-suspension disposition. Earlier in these proceedings, this Court may have considered a schedule for arriving at a disposition that is more prompt than that set forth in the statute, however until now, the FDIC has insisted on standing by the deadlines for disposition in Section 1818(g), and 12 CFR Section 308.61, and has not suggested it would willingly provide the constitutionally required prompt disposition. The Court believes that the FDIC's offer is a step in the right direction. However, in this Court's view, it came too late in this case, and the time it allows for the FDIC to arrive at a disposition is simply too lengthy in view of the short time left before the criminal trial commences.[2]

An additional reason for denying the amendment is that this Court believes it unfair to amend this Court's Order to allow the FDIC to suspend Mallen again and offer him an early hearing one week before his criminal trial. This is a time when Mallen should be preparing for the criminal case, not for a belated hearing under Section 1818(g).

## II.

◼ The FDIC contends in footnote 1 of its brief that a significant difference between the Section 1818(g) scheme and those decisions which have found other pre- or post-deprivation processes to be unconstitutional, is that the Section 1818(g) process only comes into play after an officer or director has been indicted. The FDIC asserts that this Court's previous Order failed to adequately weigh the effect of this independent judicial process involving grand jurors.[3] The FDIC argues that the indictment by an independent body followed by hearing and decision within 95 days provide plaintiffs a constitutionally sufficient level of due process. *See Merritt v. Marsh,* 791 F.2d 328 (4th Cir.1986). *Merritt* was not a Section 1818(g) case. This precise issue regarding Section 1818(g) was raised by the FDIC in *Feinberg v. Federal Deposit Ins. Corp.,* 420

**2.** The FDIC suspended Mallen effective January 27, 1987, not until 48 days after the indictment was filed. This Court's Order enjoining the FDIC from enforcing the suspension order was entered February 17, 1987 11 days after this case was filed; seven days after the hearing. The Order was also transmitted to and received by the parties by facsimile machine February 17, 1987. The FDIC waited ten days after receipt of this Court's Order to file its Motion to Alter or Amend. The delay in this proceeding has been the fault of the FDIC, not the Court or the plaintiff.

**3.** This issue was addressed to a limited degree on page 11 of this Court's February 17, 1987 Order.

F.Supp. 109 (D.D.C.1976), and rejected. In *Feinberg,* the Court stated:

It appears arguable that if the issuance of a Notice and Order of Suspension were automatic upon the return of an indictment or the filing of an information or complaint, then there might not be a need for a hearing or other incidents of due process. Such an argument could only retain its vitality though if there were no agency determination required prior to the issuance of the Notice and Order of Suspension. But this is not the case.

*Id.* at 116. (footnote omitted). In *Feinberg,* the Court then cited two areas in which the agency could exercise its discretion in suspending bank officers after the filing of an indictment. First, the agency must decide if the crime charged is one "involving dishonesty or breach of trust". *Id.* at 117. Second, the statute interjects an element of discretion by providing that the agency "may" suspend an individual indicted of such a crime "*if* continued service or participation by the individual may [1] pose a threat to the interests of the bank's depositors or [2] may threaten to impair the public confidence in the bank". Section 1818(g)(1). (emphasis supplied). *Feinberg, supra,* 420 F.Supp. at 117–18. This Court concludes that unlike the regulation involved in *Merritt,* where the mere filing of an indictment for fraud was adequate to suspend bidding privileges on government contracts, the mere filing of the indictment here was insufficient under Section 1818(g)(1) to trigger a suspension.

IT IS THEREFORE ORDERED that the Motion to Alter and Amend filed February 27, 1987 is denied.

IT IS FURTHER ORDERED that upon review of the Court's previous Order of February 17, 1987, the cite on page 4 to 12 CFR Section 1261(h) is amended to reflect the citation of 12 CFR Section 308.61(h).

## ON MOTION FOR STAY PENDING APPEAL

The Court has before it the Federal Deposit Insurance Corporation's (FDIC) Motion for Stay Pending Appeal to the United States Supreme Court filed March 10, 1987.

After fully considering the motion, the Court denies it as it applies to the plaintiffs in this case.

■ The FDIC asserts that under 28 U.S.C. Section 1252 and 2101(a) it has recommended to the Solicitor General of the United States that it be allowed to directly appeal this Court's ruling regarding the unconstitutionality of 12 U.S.C. Section 1818(g). On March 11, 1987, the FDIC filed a Notice of Appeal to the United States Supreme Court. The FDIC requests that this Court suspend its order of February 17, 1987 pending disposition of its appeal so that it may suspend Plaintiff Mallen, pending a hearing, from participation in the affairs of the Farmers State Bank of Kanawha, Iowa, until criminal charges against Mr. Mallen are resolved.

The factors to be considered in granting a stay pending appeal in the Eighth Circuit are essentially the same as those factors considered in granting preliminary injunctive relief. *Packard Elevator v. I.C.C.,* 782 F.2d 112, 115 (8th Cir.1986); *see e.g. Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981). A party seeking a stay pending appeal must show:

(1) that it is likely to succeed on the merits; (2) that it will suffer irreparable injury unless the stay is granted; (3) that no substantial harm will come to other interested parties; and (4) that the stay will do no harm to the public interest.

*Packard Elevator, supra,* at 115, *quoting, James River Flood Control Ass'n v. Watt,* 680 F.2d 543, 544 (8th Cir.1982) (per curiam). This Court has already found that the factors quoted above weigh in favor of the plaintiff, and therefore ordered preliminary injunctive relief. The Court is not inclined to reverse its previous findings in ruling on the Motion for Stay Pending Appeal.

While the rationale of the Court's previous rulings may have more far reaching effect than in this case alone, this Court's rulings are binding precedent only in the Northern District of Iowa. The FDIC has contended that this Court's previous rulings would irreparably harm it due to the potentially adverse effect on a safe and

sound banking system. The Court agrees with the FDIC and Congress that there is merit to the policy of 12 U.S.C. Section 1818(g) allowing the FDIC to suspend a bank officer indicted for a crime involving dishonesty, or breach of trust where there may be a threat to the interests of the depositors or a threat of impairment of public confidence in a bank. However, the Court was persuaded in this case that the statute and regulations as applied to Mr. Mallen would not accord him due process. To the extent that this Court's rulings have an impact on other cases involving indicted bank officers, the Court shall enter a stay of its rulings as to them, but denies the entry of a stay with regard to Mr. Mallen for the reasons mentioned in previous orders.[1]

IT IS THEREFORE ORDERED that the Motion for a Stay Pending Appeal to the United States Supreme Court is denied.

IT IS FURTHER ORDERED that a stay pending disposition of appeal is entered regarding any binding precedent this Court's Order of February 17, 1987 may have on cases involving other indicted bank officers, directors, or other persons participating in the affairs of any FDIC insured bank so as not to cause an adverse effect on a safe and sound banking system.

---

1. By entering a stay as to any similar cases, this Court is not suggesting that it will not consider other challenges to the statute if it is applied in an unconstitutional manner.