# FEDERAL DEPOSIT INSURANCE CORPORATION *v.* MALLEN ET AL.

No. 87–82.  Argued March 22, 1988—Decided May 31, 1988

STEVENS, J., delivered the opinion for a unanimous Court.

*John Harrison* argued the cause for appellant. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Cohen, Anthony J. Steinmeyer, Michael Kimmel, Ronald R. Glancz,* and *James A. Clark.*

*Mary E. Curtin,* by appointment of the Court, 484 U. S. 1055, argued the cause for appellee. With her on the brief was *David J. Siegrist.*

JUSTICE STEVENS delivered the opinion of the Court.

The question presented by this appeal concerns the constitutionality of a statutory provision that authorizes the

Federal Deposit Insurance Corporation (FDIC) to suspend from office an indicted official of a federally insured bank. The District Court concluded that the statutory post-suspension procedure is unconstitutional because it does not guarantee the suspended officer a sufficiently prompt decision or an unqualified right to present oral testimony. The District Court therefore enjoined the FDIC from enforcing an order suspending appellee from serving as the president and as a director of the Farmers State Bank in Kanawha, Iowa, and from otherwise participating in the conduct of the affairs of any FDIC-insured bank. 667 F. Supp. 652, 662, 664 (1987). We noted probable jurisdiction. 484 U. S. 911 (1987). We reverse.

I

In 1966 Congress adopted several amendments to the Federal Deposit Insurance Act to give federal banking agencies more effective regulatory powers to deal with crises in financial institutions.[1] The amendments were designed to protect the interests of depositors and to prevent the potentially debilitating effect of public loss of confidence in the banking industry. See S. Rep. No. 1482, 89th Cong., 2d Sess., 4–5 (1966) (S. Rep.); 112 Cong. Rec. 20080 (1966) (remarks of Sen. Proxmire). Congress therefore enacted 12 U. S. C. § 1818(g)(1) to give the appropriate federal banking agency[2] the authority to take immediate action to suspend an officer

---

[1] See Financial Institutions Supervisory Act of 1966, Pub. L. 89–695, Title II, 80 Stat. 1046–1055, 12 U. S. C. § 1818.

[2] The statute defines "appropriate Federal banking agency" by reference to the type of bank subject to regulation. See 12 U. S. C. § 1813(q). For example, "in the case of a national banking association, a District bank, or a Federal branch or agency of a foreign bank," the Comptroller of the Currency is the "appropriate Federal banking agency." § 1813(q)(1). Section 1813(q)(3) provides that "in the case of a State nonmember insured Bank . . . or a foreign bank having an insured branch," the FDIC is the "appropriate Federal banking agency." It is undisputed that in this case the FDIC is the appropriate federal banking agency.

or director of an insured bank if he or she is formally charged with a felony involving dishonesty or breach of trust. As originally enacted, § 1818(g)(1) permitted the appropriate banking agency to suspend an indicted bank officer without providing an opportunity to be heard either before or after issuance of the order of suspension.[3]

In 1974, the FDIC invoked its § 1818(g)(1) authority to suspend the president of an Illinois bank who had been indicted for conspiracy to commit mail fraud. That officer successfully challenged the constitutionality of the suspension on the ground that it had deprived him of property without due process of law. The three-judge District Court, in *Feinberg* v. *FDIC*, 420 F. Supp. 109 (DC 1976), found that the public

---

[3] As enacted in 1966, 12 U. S. C. § 1818(g)(1) provided:

"Whenever any director or officer of an insured bank, or other person participating in the conduct of the affairs of such bank, is charged in any information, indictment, or complaint authorized by a United States attorney, with the commission of or participation in a felony involving dishonesty or breach of trust, the appropriate Federal banking agency may, by written notice served upon such director, officer, or other person suspend him from office and/or prohibit him from further participation in any manner in the conduct of the affairs of the bank. A copy of such notice shall also be served upon the bank. Such suspension and/or prohibition shall remain in effect until such information, indictment, or complaint is finally disposed of or until terminated by the agency. In the event that a judgment of conviction with respect to such offense is entered against such director, officer, or other person, and at such time as such judgment is not subject to further appellate review, the agency may issue and serve upon such director, officer, or other person an order removing him from office and/or prohibiting him from further participation in any manner in the conduct of the affairs of the bank except with the consent of the appropriate agency. A copy of such order shall also be served upon such bank, whereupon such director or officer shall cease to be a director or officer of such bank. A finding of not guilty or other disposition of the charge shall not preclude the agency from thereafter instituting proceedings to remove such director, officer, or other person from office and/or to prohibit further participation in bank affairs, pursuant to paragraph (1), (2), (3), (4), or (7) of subsection (e) of this section." 80 Stat. 1050.

interest in prompt action justified a suspension without a prior hearing, but concluded that the officer was constitutionally entitled to a prompt and meaningful post-suspension hearing in which he could attempt to persuade the FDIC to exercise its discretion to revoke the suspension. In its opinion, the District Court emphasized that the 1966 statute had given the FDIC standardless discretion to suspend or not to suspend an indicted bank official.[4]

In response to the *Feinberg* decision, in 1978 Congress amended § 1818(g) by incorporating standards in subsection (1) to guide the FDIC in the exercise of its discretion,[5] and

---

[4] The court noted the breadth of discretion afforded the agency and intimated that if suspension was mandatory upon indictment, no pre- or post-suspension hearing would be required:

"It appears arguable that if the issuance of a Notice and Order of Suspension were automatic upon the return of an indictment or the filing of an information or complaint, then there might not be a need for a hearing or other incidents of due process. Such an argument could only retain its vitality though if there were no agency determination required prior to the issuance of the Notice and Order of Suspension. But this is not the case. Section 1818(g)(1), by its very language, requires that the agency decide whether the crime charged is one 'involving dishonesty or breach of trust.' Given the variety and nature of state offenses, it is apparent that the agency must exercise discretion as to this issue. This discretion, in fact, is enhanced by the lack in the statute of a definition of a crime of 'dishonesty or breach of trust.' But this is not the only discretionary question posed by the statute. The statute interjects an added element of discretion by providing that the agency 'may' issue a Notice and Order of Suspension; it is not required to do so. Furthermore, when the statute is construed it appears clear that even if the agency determines that the crime charged is one involving dishonesty or a breach of trust, the agency is still given—and in fact has exercised—the discretion not to issue a Notice and Order of Suspension. In addition, it is significant for purposes of due process that no specific guidelines are provided in the statute for the exercise of this discretion. The only ascertainable guidance is the general purpose of the statute: to insure the public's confidence in the stability of the financial institution." 420 F. Supp., at 116–117 (footnotes omitted).

[5] As amended in 1978, 12 U. S. C. § 1818(g)(1) provided:

"Whenever any director or officer of an insured bank, or other person participating in the conduct of the affairs of such bank, is charged in any

by enacting a new subsection (3) to give the suspended officer the right to a post-suspension hearing before the agency to demonstrate that his or her continued service would not jeopardize the interests of depositors or impair public confidence in the bank.[6] It is the adequacy of the post-suspension pro-

---

information, indictment, or complaint authorized by a United States attorney, with the commission of or participation in *a crime* involving dishonesty or breach of trust *which is punishable by imprisonment for a term exceeding one year under State or Federal law,* the appropriate Federal banking agency may, *if continued service or participation by the individual may pose a threat to the interests of the bank's depositors or may threaten to impair public confidence in the bank,* by written notice served upon such director, officer, or other person, suspend him from office or prohibit him from further participation in any manner in the conduct of the affairs of the bank. A copy of such notice shall also be served upon the bank. Such suspension or prohibition shall remain in effect until such information, indictment, or complaint is finally disposed of or until terminated by the agency. In the event that a judgment of conviction with respect to such *crime* is entered against such director, officer, or other person, and at such time as such judgment is not subject to further appellate review, the agency may, *if continued service or participation by the individual may pose a threat to the interests of the bank's depositors or may threaten to impair public confidence in the bank,* issue and serve upon such director, officer, or other person an order removing him from office or prohibiting him from further participation in any manner in the conduct of the affairs of the bank except with the consent of the appropriate agency. A copy of such order shall also be served upon such bank, whereupon such director or officer shall cease to be a director or officer of such bank. A finding of not guilty or other disposition of the charge shall not preclude the agency from thereafter instituting proceedings to remove such director, officer, or other person from office or to prohibit further participation in bank affairs, pursuant to paragraph (1), (2), or (3) of subsection (e) of this section. *Any notice of suspension or order of removal issued under this paragraph shall remain effective and outstanding until the completion of any hearing or appeal authorized under paragraph (3) hereof unless terminated by the agency."* 92 Stat. 3665–3666 (the language emphasized was added in 1978).

[6] Title 12 U. S. C. § 1818(g)(3) reads as follows:

"Within thirty days from service of any notice of suspension or order of removal issued pursuant to paragraph (1) of this subsection, the director, officer, or other person concerned may request in writing an opportunity to

cedure authorized by subsection (3) that is at issue in this appeal.

## II

On December 10, 1986, appellee was indicted by a federal grand jury in the Northern District of Iowa. He was charged with making false statements to the FDIC in violation of 18 U. S. C. § 1001 and with making false statements to the Farmers State Bank with the purpose of influencing the actions of the FDIC in violation of 18 U. S. C. § 1014, offenses that are punishable by imprisonment for more than one year, and that unquestionably involve dishonesty or breach of trust.[7] At the time of the indictment, appellee

---

appear before the agency to show that the continued service to or participation in the conduct of the affairs of the bank by such individual does not, or is not likely to, pose a threat to the interests of the bank's depositors or threaten to impair public confidence in the bank. Upon receipt of any such request, the appropriate Federal banking agency shall fix a time (not more than thirty days after receipt of such request, unless extended at the request of the concerned director, officer, or other person) and place at which the director, officer, or other person may appear, personally or through counsel, before one or more members of the agency or designated employees of the agency to submit written materials (or, at the discretion of the agency, oral testimony) and oral argument. Within sixty days of such hearing, the agency shall notify the director, officer, or other person whether the suspension or prohibition from participation in any manner in the conduct of the affairs of the bank will be continued, terminated, or otherwise modified, or whether the order removing said director, officer or other person from office or prohibiting such individual from further participation in any manner in the conduct of the affairs of the bank will be rescinded or otherwise modified. Such notification shall contain a statement of the basis for the agency's decision, if adverse to the director, officer or other person. The Federal banking agencies are authorized to prescribe such rules as may be necessary to effectuate the purposes of this subsection." 92 Stat. 3666.

[7] Appellee was convicted on both counts. The District Court, however, set aside the 18 U. S. C. § 1014 conviction on the ground that the indictment failed to allege the essential elements of the crime. On appeal, the Court of Appeals for the Eighth Circuit affirmed the conviction under 18

was the president and a director of a federally insured bank. Thus, if the FDIC found that his continued service "[might] pose a threat to the interests of the bank's depositors or

U. S. C. § 1001 and reversed the District Court's decision setting aside the conviction under § 1014. *United States* v. *Mallen,* 843 F. 2d 1096 (1988).

Appellee's conviction does not moot this case. A § 1818(g) suspension remains in effect until the charge against the bank official "is finally disposed of or until terminated by the agency." § 1818(g)(1). The structure of the statute makes clear that a charge is not "finally disposed of" until the opportunity for appellate review is exhausted. Section 1818(g)(1) provides that if a suspended official is convicted, the agency may remove that individual from office once the judgment is no longer "subject to further appellate review." It is unlikely that Congress intended to create a window between suspension and removal for convicted bank officials. Because appellee has not yet exhausted his opportunity for appellate review, the § 1818(g) suspension remains in effect. On May 10, 1988, the Eighth Circuit denied appellee's petition for rehearing and suggestion for rehearing en banc. He has 60 days from that date to file a petition for certiorari. See this Court's Rule 20.1.

Nor is the action mooted by appellee's suspension under 12 U. S. C. § 1829. That section provides: "Except with the written consent of the [FDIC], no person shall serve as a director, officer, or employee of an insured bank who has been convicted . . . of any criminal offense involving dishonesty or a breach of trust. . . ." On May 29, 1987, the judge presiding over appellee's criminal trial granted the FDIC's motion for a preliminary injunction pursuant to § 1829, prohibiting appellee from serving "as a director, officer or employee of the Farmers State Bank, Kanawha, Iowa." *FDIC* v. *Mallen,* 661 F. Supp. 1003, 1011 (ND Iowa 1987). In certain respects, the § 1818(g) suspension is broader in scope than the § 1829 suspension, thus giving reinstatement of the § 1818(g) suspension at least a marginal effect. For example, § 1818(j) imposes criminal penalties upon anyone subject to a § 1818(g) suspension who "votes for a director . . . of any bank." Section 1829 does not impose a similar prohibition.

Finally, counsel informs us that after the jurisdictional statement was filed in this case, the Iowa Superintendent of Banking placed the Farmers State Bank in receivership. The FDIC, which was appointed receiver, executed a "purchase and assumption" transaction, whereby the deposit liabilities of the Farmers State Bank were assumed by another bank. The building that once housed the Farmers State Bank now serves as a branch for the assuming bank. Yet, even though § 1818(g) simply authorizes the suspension of an indicted official as to a specified bank—a bank that in this

[might] threaten to impair public confidence in the bank," the requirements specified in § 1818(g)(1) for a suspension order would be satisfied.

On January 20, 1987, the FDIC issued an *ex parte* order containing the necessary findings, suspending appellee as the president and as a director of the bank and prohibiting him "from further participation in any manner in the conduct of the affairs of the Bank, or any other bank insured by the FDIC."[8]  App. to Juris. Statement 28a.  A copy of the order was served on appellee on January 26, 1987.  Four days later, appellee's attorney made a written request for "an immediate administrative hearing" at which he proposed to offer "both oral testimony and written evidence" to establish that appellee's continued service was not likely to pose a threat to the interests of the bank's depositors or to threaten public confidence in the bank.  App. 26.  The letter re-

---

case at least arguably no longer exists—we are persuaded that the order of suspension and the District Court's nullification of that order are not moot. The Farmers State Bank has challenged the order of receivership and the "purchase and assumption" transaction.  Brief for Appellant 13, n. 11. That challenge is currently before the Supreme Court of Iowa.  *In the matter of the Receivership of Farmers State Bank, Kanawha, Iowa* v. *Bernau*, No. 87–1199.  Because the Farmers State Bank has not yet been finally dissolved as a corporate entity and because the State Supreme Court might invalidate the receivership, we conclude that the order of suspension is not meaningless and thus further conclude that it forms an adequate prerequisite for coverage under § 1818(j).  Moreover, we note that even confirmation of the receivership might not moot the order entered pursuant to § 1818(g).  Mere changes in corporate structure would not necessarily terminate an otherwise effective order.

[8] In September and October 1986, extensive hearings were held to determine whether to suspend appellee from office pursuant to §§ 1818(e)(1), (e)(5).  Those subsections permit the appropriate federal banking agency, after conducting a hearing, to remove or suspend a director or officer of an insured bank from office for various forms of misconduct.  However, because the presiding Administrative Law Judge recused himself before rendering a decision, the proceedings were never completed.  667 F. Supp. 652, 655, n. 1 (1987).

quested that the hearing be expedited and commence no later than February 9, 1987.

After various communications with appellee's counsel, the FDIC's regional counsel, and the Administrative Law Judge who was selected to conduct the hearing, it was decided that a hearing would be held on February 18, 1987. 667 F. Supp., at 655. In those communications, the FDIC's regional counsel took the position that oral testimony would not be necessary. App. 28–30. The hearing officer, however, never had an opportunity to decide whether to receive such testimony because the administrative proceedings were interrupted by this litigation.

On February 6, 1987, appellee filed his complaint against the FDIC in the Federal District Court for the Northern District of Iowa and promptly moved for a preliminary injunction. After receiving evidence in the form of affidavits and exhibits, and after hearing oral argument—but no oral testimony—the District Court entered an order declaring the suspension "null and void" and enjoining the FDIC from enforcing it. The District Court rejected appellee's argument that the order was invalid because it was not preceded by a hearing, 667 F. Supp., at 658, but held that the post-suspension process was "constitutionally inadequate because it does not contemplate a 'prompt' disposition," id., at 659, and also "because it fails to provide for a hearing at which oral evidence can be presented," id., at 660.[9] The District Court

---

[9] Although the District Court assumed that appellee had an unqualified right to offer oral testimony at some stage of the administrative proceeding, it expressed the opinion that such testimony could be deferred until after an adverse ruling on appellee's challenge to the suspension order. It stated:

"A hearing limited to written submissions and oral argument as described in 12 CFR Section 308.61 could pass constitutional muster if it provided for a sufficiently prompt resolution and if an adverse ruling was followed by a hearing at which oral evidence could be presented. However, neither the Code of Federal Regulations, nor the statute provide for a prompt resolu-

made it clear that it was expressing no opinion on the merits of the suspension; its decision rested entirely on the perceived procedural shortcomings in the post-suspension process.

## III

It is undisputed that appellee's interest in the right to continue to serve as president of the bank and to participate in the conduct of its affairs is a property right protected by the Fifth Amendment Due Process Clause. The District Court and the parties correctly recognized that the FDIC cannot arbitrarily interfere with appellee's continuing employment relationship with the bank, nor with his interest as a substantial stockholder in the bank's holding company. See *Feinberg* v. *FDIC*, 173 U. S. App. D. C. 120, 125, 522 F. 2d 1335, 1340 (1975); cf. *Cleveland Bd. of Education* v. *Loudermill*, 470 U. S. 532, 538–541 (1985). It is also undisputed that the FDIC's order of suspension affected a deprivation of this property interest. Accordingly, appellee is entitled to the protection of due process of law.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey* v. *Brewer*, 408 U. S. 471, 481 (1972). Here again, we at least start with substantial agreement. Appellee does not contend that he was entitled to an opportunity to be heard prior to the order of suspension. An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation. See *Barry* v. *Barchi*, 443 U. S. 55, 64–66 (1979); *Dixon* v. *Love*, 431 U. S. 105, 112–115 (1977); *North American Cold Storage Co.* v. *Chicago*, 211 U. S. 306, 314–321 (1908). In this case, the postponement of the hearing is supported by such an interest. The legislation under scrutiny is premised on the congressional finding that

---

tion of such a hearing, nor do they provide for a later opportunity to present live testimony." *Id.*, at 661.

prompt suspension of indicted bank officers may be necessary to protect the interests of depositors and to maintain public confidence in our banking institutions. See S. Rep., at 4–5; 112 Cong. Rec. 20080 (1966) (remarks of Sen. Proxmire). This interest is certainly as significant as the State's interest in preserving the integrity of the sport of horse racing, an interest that we deemed sufficiently important in *Barry* v. *Barchi, supra,* at 64–65, to justify a brief period of suspension prior to affording the suspended trainer a hearing. Moreover, as in *Barchi,* appellee's suspension was supported by findings that assure that the suspension was not baseless. A grand jury had determined that there was probable cause to believe that appellee had committed a felony. Such an *ex parte* finding of probable cause provides a sufficient basis for an arrest, which of course constitutes a temporary deprivation of liberty.[10] See *Baker* v. *McCollan,* 443 U. S. 137, 142, 143 (1979). It should certainly be sufficient, when coupled with the congressional finding that a prompt suspension is important to the integrity of our banking institutions, to support the order entered in this case on January 20, 1987, even though the FDIC did not provide appellee with a separate pre-suspension hearing. The three-judge District Court in the *Feinberg* case, the District Court in this case, and this Court are all in accord on that proposition.

We cannot agree with the District Court, however, that appellee was denied a sufficiently prompt post-deprivation hearing. As our cases indicate, the District Court was properly concerned about the importance of providing prompt post-deprivation procedures in situations in which an agen-

---

[10] Section 1818(g)(1) authorizes the suspension of a bank officer "charged in any information, indictment, or complaint authorized by a United States attorney, with the commission of or participation in a crime involving dishonesty or breach of trust which is punishable by imprisonment for a term exceeding one year under State or Federal law . . . ." Federal crimes punishable by imprisonment for a term in excess of one year must be prosecuted by indictment, unless the defendant waives this right. Fed. Rules Crim. Proc. 7(a) and (b).

cy's discretionary impairment of an individual's property is not preceded by any opportunity for a pre-deprivation hearing. See *Barchi, supra,* at 66.. However, the District Court seems to have been improperly concerned with the danger of an interminable delay by the agency, rather than by what would have happened in this case if the proceedings had not been interrupted, or indeed, what might have happened if the FDIC had been as dilatory as the statute permits. For even though there is a point at which an unjustified delay in completing a post-deprivation proceeding "would become a constitutional violation," *Cleveland Bd. of Education* v. *Loudermill,* 470 U. S., at 547, the significance of such a delay cannot be evaluated in a vacuum. In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken. Cf. *Logan* v. *Zimmerman Brush Co.,* 455 U. S. 422, 434 (1982); *Mathews* v. *Eldridge,* 424 U. S. 319, 334–335 (1976).

Section 1818(g)(3) requires the FDIC to hold a hearing within 30 days of a written request for an opportunity to appear before the agency to contest a suspension and requires that it notify the suspended officer of its decision within 60 days of the hearing. Thus, at maximum, the suspended officer receives a decision within 90 days of his or her request for a hearing. In this case, the agency reported that it would have been able to issue a written decision within 30 days after the hearing.[11] In addition, the initial hearing was scheduled

---

[11] In its order denying the FDIC's motion to alter or amend its injunction, the District Court wrote:

"The Federal Deposit Insurance Corporation (FDIC) now requests that this Court alter the relief that it ordered. The FDIC proposed that it could hold a post-suspension hearing under 12 U. S. C. Section 1818(g) on

to take place—had it not been interrupted by the preliminary injunction—19 days after it was formally requested.

Appellee's interest in continued employment is without doubt an important interest that ought not be interrupted without substantial justification. We have repeatedly recognized the severity of depriving someone of his or her livelihood. See *Brock* v. *Roadway Express, Inc.*, 481 U. S. 252, 263 (1987); *Loudermill*, 470 U. S., at 543. Yet, even assuming that the FDIC required the complete 90 days to hear the case and reach its decision, we are not persuaded that this exceeds permissible limits. In fact, a suspended bank officer has an interest in seeing that a decision concerning his or her continued suspension is not made with excessive haste. The statute imposes a permissive standard for continuing a suspension, and presumably, when in doubt, the agency may give greater weight to the public interest and leave the suspension in place, particularly when the suspension does not impose the additional harm of a significant, incremental injury to reputation. Through the return of the indictment, the Government has already accused the appellee of serious wrongdoing. The incidental suspension is not likely to augment this injury to the officer's reputation. We thus conclude that the 90-day period is not so long that it will always violate due process. In many cases, perhaps most, it will be justified by an important government interest coupled with factors minimizing the risk of an erroneous deprivation. Cf.

---

March 9, 1987; with an oral disposition within 15 days (March 26, 1987); and written disposition within 30 days (April 8, 1987). The Court finds that this proposed schedule suffers from the same difficulties that prompted this Court's decision of February 17, 1987. Mallen's criminal trial is set for March 16, 1987, and it is estimated that it will last one week. The FDIC's disposition concerning the suspension under this proposed schedule would be entered only after Mallen has 'suffered the full penalty imposed' by the suspension. This procedure does not offer a sufficiently prompt process as required under *Barry* v. *Barchi*, 443 U. S. 55, 66 . . . (1979)." 667 F. Supp., at 662–663.

*id.*, at 546–547 (9-month delay in final decision not "unconstitutionally lengthy *per se*").

The magnitude of the public interest in a correct decision counsels strongly against any constitutional imperative that might require overly hasty decisionmaking. The same governmental interest that justifies permitting suspension prior to the opportunity to be heard extends to this analysis as well. Congress has determined that the integrity of the banking industry requires that indicted bank officers be suspended until it is determined that they do not pose a threat to the interests of the bank's depositors or threaten to undermine public confidence in the bank. To return these officers to a position of influence in the conduct of the bank's affairs prior to an opportunity to weigh the evidence carefully would threaten these interests in the same way as allowing them to remain in office from the start. Thus, the public has a strong interest in seeing the ultimate decision made in a considered and deliberate manner. Congress certainly acted within constitutional bounds in determining that 30 days might be required to set and prepare for the hearing and that in some cases another 60 days may be needed to reach a decision. The decision is a serious one and may involve complex issues and an extensive evidentiary record. See *Feinberg*, 420 F. Supp., at 120 (hearing would involve a "complex legal question" and "subtle interrelation of fact and policy").

Moreover, and perhaps most significantly, there is little likelihood that the deprivation is without basis. The returning of the indictment establishes that an independent body has determined that there is probable cause to believe that the officer has committed a crime punishable by imprisonment for a term in excess of one year. This finding is relevant in at least two important ways. First, the finding of probable cause by an independent body demonstrates that the suspension is not arbitrary. Second, the return of the indictment itself is an objective fact that will in most cases

raise serious public concern that the bank is not being managed in a responsible manner. In addition, when § 1818(g) was initially enacted, Congress indicated that suspensions would be "virtually routine." S. Rep., at 2. The later amendments prompted by the *Feinberg* decision do not suggest that Congress has disavowed this expectation; rather, the standard adopted by Congress—"may pose a threat to the bank's depositors or may threaten to impair public confidence in the bank"—would appear to be easily satisfied in the case of bank officials charged with crimes involving dishonesty. One would expect that a decision not to suspend would be the exception. It is thus unlikely that any particular suspension would be erroneously imposed.

We are therefore persuaded that the congressionally recognized interest in maintaining confidence in our banking institutions, coupled with the finding of probable cause that the officer has committed a felony involving dishonesty, is sufficient ground for a regulatory suspension of up to 90 days without the benefit of a post-suspension ruling. In reaching a contrary result, the District Court attached importance to the fact that the criminal proceedings might be concluded more promptly than the FDIC proceeding. The Court reasoned that because the Speedy Trial Act requires that a federal criminal trial take place within 70 days of indictment—plus, of course, time properly excluded under the Act—the criminal trial might well take place before the FDIC need reach a decision. See 18 U. S. C. § 3161. The Court accordingly concluded that the statutorily required hearing is "a toothless remedy for the plaintiffs since the agency can postpone a disposition until after the criminal trial has concluded." 667 F. Supp., at 659. "It is a remedy only if the agency chooses for it to be a remedy." *Ibid.*

We find the possibility that a suspended officer's criminal trial may conclude before expiration of the 90-day period from request for a hearing to decision quite irrelevant. If

appellee had been promptly acquitted, the basis for the suspension would have disappeared and the order would have been vacated. On the other hand, a conviction merely strengthens the case for maintaining the suspension and provides grounds for suspension under § 1829 as well.[12] The criminal trial merely constitutes a potentially intervening factor that may require that the suspension be promptly vacated; it is difficult to conceive of how this intervening factor interferes with appellee's due process rights.

Nor is this case controlled by our decision in *Barry* v. *Barchi*, 443 U. S. 55 (1979). In *Barchi*, a horse trainer's license was suspended for 15 days after a horse he trained was discovered to have had drugs in its system during a race. The state regulatory scheme raised a rebuttable presumption that the trainer either administered the drug or was negligent in protecting against such an occurrence. The trainer claimed that he neither administered the drug nor was negligent. In considering the administrative scheme, we first concluded that the State acted within the bounds of due process in suspending the trainer without a pre-suspension hearing. However, we concluded that the scheme violated due process because "it [was] as likely as not" that the trainer would irretrievably suffer the full penalty before the State would be put to its proof at a post-suspension hearing. *Id.*, at 66. In such situations, the State must assure a prompt post-suspension hearing, "without appreciable delay." *Ibid.*

---

[12] Section 1829 provides:

"Except with the written consent of the Corporation, no person shall serve as a director, officer, or employee of an insured bank who has been convicted, or who is hereafter convicted, of any criminal offense involving dishonesty or a breach of trust. For each willful violation of this prohibition, the bank involved shall be subject to a penalty of not more than $100 for each day this prohibition is violated, which the Corporation may recover for its use."

Imposition of a § 1829 suspension or removal does not moot a § 1818(g) suspension. See n. 7, *supra.*

In this case by contrast, the appellee is not denied a meaningful opportunity to be heard. Rather than closing the door to the benefit of an opportunity to be heard, the possibility that the criminal trial may precede the FDIC hearing simply provides an additional forum at which to demonstrate that the suspension was unjustified. If the official is successful in the criminal proceeding, then due process has prevailed and the order of suspension must be vacated. If he or she is convicted, the order of suspension is further supported.

We also reject appellee's contention that § 1818(g) violates due process because it does not guarantee an opportunity to present oral testimony. The statute provides that the suspended officer may "submit written materials (or, at the discretion of the agency, oral testimony)" and present oral argument. § 1818(g)(3). The relevant regulation, in turn, delegates the decision whether to accept oral testimony to the hearing officer. See 12 CFR § 308.61(e) (1987). In rejecting appellee's contention we may assume that there are post-suspension proceedings under § 1818(g) in which oral testimony is essential to enable the hearing officer to make a fair appraisal of the impact of a suspended officer's continued service on the bank's security and reputation. Indeed, we may assume that this is such a case. The problem with appellee's position, however, is that he did not give the hearing officer an opportunity to decide whether to hear whatever testimony he might have adduced. No offer of proof was ever made, and thus certainly was not rejected. For all we know, the hearing officer might have accepted such evidence; or if he rejected it, he might have been entirely correct in deciding that it was merely cumulative to material that was adequately covered by written submissions or that it was otherwise unnecessary or improper. A statute such as this is not to be held unconstitutional simply because it may be applied in an arbitrary or unfair way in some hypothetical case not before the Court. There is no inexorable requirement that

oral testimony must be heard in every administrative proceeding in which it is tendered.[13] See *Califano* v. *Yamasaki,* 442 U. S. 682, 696 (1979). The District Court's reliance on the absence of such a guarantee in this case was therefore misplaced.

## IV

The post-suspension procedure authorized by § 1818(g)(3) is not unconstitutional on its face; nor do we find any unfairness in the FDIC's use of that procedure in this case. The District Court's preliminary injunction is accordingly reversed.

*It is so ordered.*

---

[13] The three-judge District Court in *Feinberg* concluded that oral testimony is not constitutionally required in FDIC § 1818(g) suspension hearings:

"While the hearing need not be a trial-type hearing, notice, the opportunity to be represented by counsel, for written submissions, and for oral argument, appear mandated by the circumstances. ، Certainly notice of the right to be heard is essential. *See Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306 . . . (1950). The assistance of counsel is also needed in these cases, particularly since the hearing will involve a complex legal question: whether the crime charged is one involving dishonesty or breach of trust, as well as a question requiring the subtle interrelation of fact and policy: the effect upon the public of the indictees holding office and participating in the affairs of the bank. As to the presentation of live evidence, the 'nature of the relevant inquiry,' 424 U. S. 343, . . . does not seem to require any more than written submission. However, oral argument would be necessary." 420 F. Supp., at 120 (footnotes omitted).