*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0223P (6th Cir.)
File Name: 04a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TIMOTHY MORRISON,
  *Plaintiff-Appellant,*

  *v.*

RICHARD L. WARREN, et al.,
  *Defendants-Appellees.*

No. 02-3672

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 00-01341—Dan A. Polster, District Judge.

Argued: January 28, 2004

Decided and Filed: July 13, 2004

Before: MARTIN, RYAN, and MOORE, Circuit Judges.

---

### COUNSEL

**ARGUED:** Dennis R. Thompson, THOMPSON LAW OFFICES, Akron, Ohio, for Appellant. Susan Baker Ross, SUMMIT COUNTY PROSECUTOR'S OFFICE, Akron, Ohio, for Appellees. **ON BRIEF:** Dennis R. Thompson,

THOMPSON LAW OFFICES, Akron, Ohio, for Appellant. Sandy J. Rubino, SUMMIT COUNTY PROSECUTOR'S OFFICE, Akron, Ohio, for Appellees.

---

### OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Timothy Morrison, former Deputy Sheriff of Summit County, appeals the district court's grant of summary judgment to Sheriff Richard Warren and Human Relations Officer Yamini Adkins, both of the Summit County Sheriff's Office. Morrison claims that procedures culminating in his discharge from the police force violated his Fourteenth Amendment procedural due process rights.

## I

Former Deputy Sheriff Morrison was accused of domestic abuse by his wife, Jade Morrison, who requested and obtained a Civil Protection Order against him on May 26, 1998. The Order, which would become permanent after fourteen days absent any objection, prohibited Morrison from possessing, using, carrying, or obtaining any deadly weapon for up to five years. As a result, Morrison was unable to satisfy his primary job requirement to carry a gun and was discharged from the force.

Yamini Adkins initiated the discharge process in a May 26 telephone conversation with Morrison in which she informed him that she was aware of the Civil Protection Order. Later that day, she sent Morrison a letter stating that he would be placed immediately on Administrative Leave, and instructing him to report to a pre-discharge hearing the following day. In an effort to save his job, Morrison filed a motion in state court to stay and vacate the Civil Protection Order.

At the May 27 hearing, Adkins explained the consequences of the Civil Protection Order—i.e., discharge—and notified Morrison that a pre-discharge conference would be held the following day. Adkins did not supplement her oral statements with written specifications as to the grounds for Morrison's discharge.

At the pre-discharge conference, which was administered by a neutral prosecutor, Morrison was asked to explain the circumstances surrounding the Civil Protection Order. Morrison presented a copy of his motion to stay and vacate the Order and indicated that the magistrate had scheduled a hearing on the motion for June 3. Morrison then requested to postpone the pre-discharge conference until after the magistrate ruled on the motion. His request was denied and it was acknowledged that, despite the motion, the Order was currently in effect. Morrison was then presented with a letter, dated May 28, 1998, from Sheriff Warren, stating: "[i]n view of the current Domestic Relations Order, you are removed from your position of Deputy Sheriff." At the conclusion of the hearing, the prosecutor issued a finding of just cause and Morrison's discharge went into effect on May 28.

Morrison challenged his discharge, and a post-discharge arbitration was scheduled for March 17 and 18, 1999, pursuant to the terms of the collective bargaining agreement between the employees' union and the Summit County Sheriff's Office. Union members, including Morrison, were subject to the agreement, but only the union could exercise a member's rights in employment disputes. As a result, the union, not Morrison, represented Morrison's case in his discharge hearings. Also, the union, not Morrison, had standing to challenge the prosecutor's finding of just cause in state court. The union declined to make that challenge.

During the period between the pre-discharge hearing and the March 1999 arbitration, the magistrate vacated the Civil Protection Order. This did not affect Morrison's discharge, however, and the arbitration remained scheduled. During the

pendency of the arbitration, Morrison was charged on July 2, 1998, with additional acts of domestic violence against Jade Morrison and, pursuant to a plea agreement, pleaded "no contest" to a reduced charge of Disorderly Conduct on September 10, 1998.

At the two-day arbitration the following March, the arbitrator framed the issue as follows:

> The question to be resolved is whether the Sheriff violated the collective bargaining agreement when it terminated [Morrison], and if so, what should the remedy be?

The Sheriff's Office acknowledged that the Civil Protection Order—the basis for Morrison's discharge—had been vacated. Nonetheless, it argued that Morrison's discharge was required under the Office's "zero-tolerance policy" for domestic abuse.[1] As evidence, the Sheriff's Office submitted Morrison's July 2 charge and September 10 conviction for Disorderly Conduct.

The arbitrator then engaged in a lengthy analysis of whether the evidence of Morrison's Disorderly Conduct conviction—which occurred after his discharge—should be admitted to justify a second discharge. The arbitrator concluded that although post-discharge conduct is not ordinarily admissible or relevant in making a just cause determination, Morrison's post-discharge conduct fell into a narrow exception recognized in arbitration precedent that allows the admission of post-discharge conduct that is "part of one connected whole." The arbitrator found that because both the Civil Protection Order and the conduct were rooted

---

[1]During the arbitration hearing, the Sheriff introduced testimonial evidence that "a criminal charge of domestic violence against [the Sheriff's Office's] employees will result in a finding of 'conduct unbecoming' that will always justify immediate discharge without resort to the progressive disciplinary policy. . . ." J.A. at 81.

in Jade Morrison's allegations of domestic abuse, he would consider evidence of Morrison's post-discharge conduct.

On July 30, 1999, the arbitrator issued a 43-page decision denying in part and sustaining in part the union's position. The arbitrator first found that because the Civil Protection Order had been vacated, the May 28 discharge was invalid. However, the arbitrator also found that "the Sheriff is justified in not returning [Morrison] to its employ," because Morrison's discharge was justified by his post-discharge conduct, stating:

> It would be a serious problem for the Sheriff if [Morrison, upon reinstatement while subject to the conviction] were to violate his probation . . . and have to be locked up with some of the criminals he arrested. Such a reasonably foreseeable situation is intolerable and supports a finding that just cause exists for . . . termination.

The arbitrator awarded Morrison back pay from May 28, 1998 (the date of his "premature" discharge), to July 2, 1998 (the date upon which the domestic violence charge was filed). Fashioning a remedy similar to that provided in section 10.4 of the collective bargaining agreement, the arbitrator also decided that Morrison should be treated as if he were on leave with vacation pay for the period between July 2, 1998, to September 10, 1998 (the date of his conviction). Finally, the arbitrator held that Morrison's discharge was effective on September 10, 1998.

Morrison, without support from the union, instituted an action in state court to appeal the arbitrator's award. The state court ruled that Morrison had no standing to bring this claim under the collective bargaining agreement, which gives exclusive rights to the union to appeal an arbitrator's award. The state court's judgment was affirmed on appeal.

Morrison then filed an action in federal district court, claiming, among other things, that the Sheriff's Office violated his procedural due process rights by failing to provide these processes:

(1) adequate notice of the pre-termination hearing of May 28, 1998;

(2) any notice or pre-termination hearing relating to discharge based on his post-discharge conduct; and

(3) any review of the arbitrator's decision relating to his post-discharge conduct.

As to the first claim, the district court ruled that Morrison received sufficient oral notice of the May 28 hearing. With regard to second claim, the district court ruled that Morrison failed to "explain how the post deprivation procedures set forth in the collective bargaining agreement" do not satisfy the process requirements vis-a-vis the post-discharge conduct. On the third claim, the district court found that it was not permitted to review the substance of the arbitrator's award and that it was satisfied that the arbitrator "carefully considered whether Morrison's post-termination conduct was properly before him in determining the propriety of Morrison's discharge, and set forth numerous reasons for its inclusion."

For the reasons discussed below, we agree that oral notice was sufficient. As to Morrison's other contentions, however, more consideration than the district court provided is due. The district court cut short its due process analysis because it found that Morrison was requesting substantive review of the arbitrator's award. We disagree with this finding. Rather than seeking substantive review, Morrison is claiming that the admission of his post-discharge conduct lacked procedural safeguards—e.g., notice and an opportunity to contest the evidence. Morrison contends that he was not able to argue his case because he was taken by surprise by evidence of a new

charge; this contention raises at least a colorable claim of denial of due process. *See Carter v. Western Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985) (grievant's claim that he was denied the right to argue his case before the decision makers raises at least a colorable claim of denial of due process). Because Morrison's claims implicate fundamental due process issues under the Fourteenth Amendment, we now consider them.

## II

### A.  Standard of Review

We engage in a *de novo* review of the district court's grant of summary judgment. *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This motion for summary judgment involves no disputed issue of fact; thus, we must decide whether, as a matter of law, Morrison was afforded due process. In doing so, we view the evidence and draw all reasonable inferences in favor of Morrison, as the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Berlin v. Michigan Bell Tele. Co.*, 858 F.2d 1154, 1161 (6th Cir. 1988).

### B.  Waiver of Section 1983 Claim

Sheriff Warren and Adkins characterize this appeal as Morrison's attempt to "effect a substantive review of the arbitrator's [award]" that was waived as a result of the union's decision not to appeal it. Sheriff Warren and Adkins argue that parties who contractually agree to binding arbitration, as Morrison has here, waive judicial review except over the determination of "whether there is a rational nexus between the collective bargaining agreement and the [arbitrator's

award, and whether the arbitrator was corrupt or committed gross procedural improprieties." Appellee's Br. at 9 (citing *Cuyahoga Cmty. Coll. v. Dist. 925, Serv. Employees Intern. Union, AFL-CIO*, 42 Ohio App.3d 166, 167 (Ohio App. 8th Dist. 1988)).

This argument fails for two reasons. First, Morrison is not requesting a substantive review of the arbitrator's award; rather, he asks this Court to consider whether the evidence of his post-discharge conduct was used in accordance with due process requirements. Due process requires notice of the charges and a meaningful opportunity to contest the evidence. *See Carter,* 767 F.2d at 273 (at a minimum, procedural due process requires that the discharged employee be permitted to call witnesses and produce evidence on his own behalf, and to know and have the opportunity to challenge the evidence against him). Thus, if evidence is admitted to support a new charge for which an employee was given no notice and had no time to prepare, the employee is entitled to assert in federal court a claim for violation of due process. Because Morrison claims that his procedural due process rights were violated when, to his surprise, evidence was admitted to support a new charge—which ultimately was the basis for his discharge—judicial review is appropriate.

Second, the arbitration clause in the collective bargaining agreement lacks the clear and unmistakable language that is necessary to waive procedural due process rights, and thus cannot be interpreted to waive Morrison's ability to assert those rights. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78-79 (1998) (waiver of union members' federal statutory rights in a collective bargaining agreement must be "clear and unmistakable"); *Ciambreillo v. County of Nassau*, 292 F.3d 307 (2nd Cir. 1991) (binding arbitration clause in collective bargaining agreement did not waive the employee's Fourteenth Amendment procedural due process right because it lacked "clear and unmistakable language"). The only reference to waiver in Morrison's arbitration clause relates to

the Sheriff's Office's disciplinary procedures, not the Fourteenth Amendment. The clause states:

> Failure to elect and pursue one of these three options [appear at the hearing; appear at the hearing with counsel; or elect in writing to waive the hearing opportunity] will be deemed a waiver of the employee's rights to disciplinary hearings.

Thus, neither the arbitration agreement nor any actions or omissions pursuant to that agreement waives Morrison's ability to file a Section 1983 procedural due process claim. His claims are properly before us.

### C. Procedural Due Process

To resolve procedural due process issues, we engage in a two-step analysis. *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). We initially determine whether a protected property interest exists and then determine what procedures are required to protect that interest. *Id*. Because Morrison's property interest in his continued employment is undisputed, we move to the second step.

#### 1. Pre-termination Process

The Supreme Court has held that an employee who has a protected property interest in continued employment is entitled to a pre-termination hearing, but that the pre-termination hearing need not be elaborate. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Morrison claims that the Sheriff's Office violated his procedural due process right to a meaningful pre-termination hearing by neglecting to provide written notice of the specific charges against him. Yet the Court determined in *Loudermill* that "[t]he tenured public employee is entitled to *oral or written* notice of the charges against him." *Id*. at 546 (emphasis added). The oral notice provided by Adkins to Morrison—that he would be discharged as a result of his

inability to carry a gun due to the Civil Protection Order—was sufficient.

Procedural due process also requires "an explanation of the employer's evidence and an opportunity for the employee to present his side of the story." *Id*. at 542. The Sheriff's Office also satisfied this requirement. Adkins explained that the charge was based on the Civil Protection Order; then she scheduled a pre-termination hearing for May 28, at which Morrison made an informed presentation. Inasmuch as Morrison received notice of the charge against him and was afforded an opportunity to rebut it, the pre-termination hearing satisfies constitutional requirements. *See id.*

#### 2. Post-termination Process

In Morrison's post-termination arbitration, the arbitrator held that the Sheriff's Office prematurely discharged Morrison, but that it was justified "in not returning [Morrison] to its employ" based on his post-discharge domestic violence charge and related conviction. The parties give differing characterizations of the arbitrator's ruling. While the Sheriff's Office argues that the arbitrator considered Morrison's post-discharge conduct only to construct an appropriate remedy for the invalid discharge, Morrison contends that the arbitrator, rather than constructing a remedy, found a distinct justification for a second, valid discharge. We agree that Morrison suffered a second discharge. However, in this context our characterization of the arbitrator's award is irrelevant. Under either characterization, Morrison held a property interest in his employment from the moment his initial discharge was deemed invalid—conceptually, when a discharge is deemed invalid, the property interest was never lost. Therefore, he deserved all the protections that procedural due process requires for the deprivation of a property interest, whether that deprivation is characterized as a discharge or a failure to reinstate.

An essential principle of due process is that a deprivation of property "be preceded by notice and opportunity for

hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Although the formality and procedural requisites for the hearing can vary, "depending upon the importance of the interests at stake and the nature of the subsequent proceedings," *Loudermill*, 470 U.S. at 545 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)), the fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner, *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). At the least, this requires notice of the charges and an opportunity to view and contest the evidence supporting them. *Loudermill*, 470 U.S. at 546. Such notice must be reasonably calculated, under the circumstances, to apprise the interested parties of the pendency of an action and afford them an opportunity to present their objections. *Carter*, 767 F.2d at 273.

Morrison's arbitration, which amounted to a post-deprivation hearing on his first discharge and both the pre- and post-deprivation hearings for his second discharge, was extremely abbreviated in terms of satisfying due process for the second discharge. Morrison, anticipating a hearing on his original discharge, instead became aware—only at the arbitration—that he would be discharged on the basis of the domestic violence charge. Under the procedures set forth in the collective bargaining agreement, and in the absence of the first, invalid discharge, Morrison would normally get an opportunity, pursuant to the collective bargaining agreement, for pre- and post-discharge hearings on the domestic violence charge. Thus, we must determine whether the abbreviated process that he received satisfies due process requirements.

Sheriff Warren contends that it does, arguing that where the grievant is aware of his post-discharge conduct (and the consequential charge and conviction), oral notice—even if only provided at the arbitration hearing—of the intent to submit the domestic violence charge is sufficient to satisfy due process requirements. The Sheriff states:

[Morrison] can hardly argue that he was surprised when he received notice that his former employers intended to introduce evidence of the subsequent conviction. [Morrison] argues in his brief that evidence of this charge was presented at his post-deprivation hearing—he does not, nor can he allege, that he was not given an opportunity to respond to the evidence during the two-day arbitration.

We recognize that abbreviated process may be justified in some circumstances. Whether it is justified here depends on our application of the constitutional balancing test set forth in *Mathews,* 424 U.S. at 335. The four *Mathews* factors are: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used; (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

With regard to the first two factors, Morrison's property interest in his continued employment was not subject to any risk of erroneous deprivation through the procedures used. His Disorderly Conduct conviction, based on charges of domestic violence, required his discharge under the Sheriff's Office's "zero-tolerance policy;" neither reinstatement nor additional recovery was possible. As to the third factor, additional procedural safeguards would provide no value: again, Morrison's conviction required his discharge, and nothing that a second hearing would provide could avoid that outcome.

Finally, with regard to the government's interest, there is an undeniable argument in favor of upholding the abbreviated process. The employee was a Deputy Sheriff charged with protecting the citizens of Summit County. The government interest in effective law enforcement is extremely high and the need to speedily replace public safety officers who are convicted of crimes is obvious. *Buckner*, 901 F.2d at 497

(quoting *Loudermill*, 470 U.S. at 546). The interests in efficiently employing safe and effective public safety officers are not outweighed by Morrison's futile interest in reinstatement or additional recovery, particularly when he has already been convicted and the conviction requires his discharge. Therefore, the abbreviated process, in our view, constitutes a sufficiently meaningful opportunity to satisfy due process requirements.

There remains the question of whether Morrison should have been afforded notice and an opportunity to contest the domestic violence charge at some time prior to the arbitration. We hold that Morrison had plenty of time during the arbitration—two full days, in fact—to know of and rebut the second charge against him. Under the specific facts of this case, we conclude that the arbitration sufficiently incorporated all of the due process safeguards that the Constitution requires, and Morrison suffered no due process violation.

### III

For the foregoing reasons, we AFFIRM the judgment.