James HIGGINS, Plaintiff

v.

JEFFERSON COUNTY, KENTUCKY, et al., Defendants.

Civil Action No. 3:03–CV–2–H.

United States District Court,
W.D. Kentucky,
at Louisville.

July 28, 2004.

Fred R. Radolovich, Louisville, KY, for Plaintiff.

Angela Summers Goudy, Suzanne D. Cordery, Louisville, KY, for Defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

This case arises out of disciplinary action the Jefferson County Corrections Department took against an employee, James Higgins, which resulted in his termination. Plaintiff now alleges violations of his constitutional due process rights. Higgins alleges that Defendants violated both his property interest in his employment or the liberty interest in preserving the integrity of his name. The analysis for each is essentially the same. The Court concludes that the notice and hearing Plaintiff actually received prior to his termination together with the availability of more extensive hearings afterwards protected all his con-

stitutional due process rights. The Court therefore will sustain Defendants' motion for summary judgment.

## I.

On June 16, 2002, Plaintiff restrained a belligerent arrestee and during the course of doing so, a struggle ensued and the arrestee was injured. Soon thereafter, Plaintiff gave oral statements to his immediate supervisor and completed an extraordinary incident report. After police staff reviewed a video of the incident, Lieutenant Colonel Green ("Lt.Green") placed Plaintiff on "no inmate contact" orders pending further review of the incident. On June 18, Lt. Green reviewed the incident on video and placed Plaintiff on administrative leave of absence pending an investigation by the Department of Corrections. He notified Plaintiff by sending both a suspension letter and a Disciplinary Action Notice (the "Action Notice"). The suspension letter indicated he was to report on June 21 for his administrative hearing. The Action Notice stated the charges against Plaintiff, described the incident, and set out the reasoning behind the charges. Lt. Green did not interview Plaintiff in the course of his investigation as required by the then applicable Collective Bargaining Agreement between Jefferson County and the Teamsters Local Union 783 (the "CBA").[1]

On June 21, Lt. Green once again served Plaintiff with the Action Notice this time in the presence of his union steward, Officer Anthony Summerall, and Plaintiff signed it. Defendants assert that after serving Plaintiff the Action Notice, a disciplinary action meeting was held with Plaintiff, Lt. Green, and the union steward all present.[2] Plaintiff admits that he did speak during this meeting, mostly apologizing for the incident, but asserts that there was no real or meaningful "opportunity to be heard" and amounted to a direct firing. Plaintiff was then given a letter terminating his employment.

On June 24, Plaintiff submitted a grievance to appeal the disciplinary action. Plaintiff followed Step 1 of the grievance procedure set out in Article 7, Section 4(B),[3] by submitting a written appeal to Chief of Corrections Horton as to the discipline imposed in the June 21 disciplinary action meeting.[4] A few days later, Defendant Horton denied the grievance. Plaintiff did not proceed to Step 2 of the mediation and the grievance process, therefore, ended.[5]

---

1. Because Plaintiff was a non-probationary sworn officer his discipline was governed by the Teamster's CBA. Article 6 of the CBA preserves and acknowledges Jefferson County government's authority to terminate employees for proper cause, and Article 19 permits termination for a first offense if such offense is a major offense like excessive force.

2. Article 19, Section 3 of the CBA requires that an employee be entitled to have one union representative present at a disciplinary action meeting.

3. Section 4(B) of Article 7 is post-discipline procedures for grievances as to termination.

4. Article 7, Grievance Procedure, Section 4(B), Grievances regarding termination or demotion shall be settled in the following manner:

> Step 1. Within seven (7) working days from the date an employee knew or should have known of an alleged infraction giving rise to a grievance, the employee may present a written grievance to the Chief of Corrections, with a copy to the Chief Union Steward. The Chief shall give a written answer to the employee within seven (7) working days after such presentation with a copy to the Chief Union Steward.

5. Step 2. If the employee is not satisfied with the answer from the Chief of Corrections, a written grievance concerning termination or demotion shall be appealed by requesting mediation within seven (7) working days of receipt of the Chief's response.

Plaintiff argues that Defendants violated his procedural due process rights by failing to provide him with an opportunity to be heard prior to his termination. Defendants have moved to dismiss all of Plaintiff's constitutional law claims pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative summary judgment pursuant to Fed. R.Civ.P. 56(c).[6] The only issue is whether the disciplinary action meeting and other procedures provided Plaintiff with an adequate due process during and after the termination process.[7]

## II.

■ The Supreme Court has said that prior to termination a public employee dismissable only for cause is entitled to a limited pre-termination hearing followed by a more comprehensive post-termination hearing. *Cleveland Board of Education v.* *Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). An employee is not entitled to a full evidentiary hearing prior to termination, but is entitled to (1) notice of the charges against him and (2) an opportunity to respond either orally or in writing before discharge. *See id.* The pre-termination process "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–546, 105 S.Ct. 1487. The Sixth Circuit has explained that a public employee terminable only for "just cause" under the CBA, had a constitutional right to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Buckner v. City of Highland*

**6.** As stated in the Court's former Memorandum and Opinion, no one disputes Plaintiff's constitutional property interest in his employment under the CBA. *Leary v. Daeschner,* 228 F.3d 729, 742 (6th Cir.2000). The determination of a cognizable property interest is the first step in a procedural due process analysis under the Fourteenth Amendment. *See Johnston–Taylor v. Gannon,* 907 F.2d 1577, 1581 (6th Cir.1990). The real question presented by Defendants' previous and current motion to dismiss is whether the pre-termination procedures afforded to Plaintiff were constitutionally sufficient, i.e., whether Plaintiff has sufficiently alleged that he was deprived of the right to present his side of the story prior to termination. The Court earlier concluded that whether Plaintiff alleged facts sufficient to establish a denial of notice or an opportunity to be heard was not absolutely clear because the facts were not sufficiently set out. The Court noted that it may need an evidentiary hearing to resolve this issue. *See Johnston–Taylor,* 907 F.2d at 1582.

The Court reached the same conclusion on Plaintiff's claim that he was deprived of a liberty interest because he was stigmatized and his reputation injured by the suspension, charges, and termination, i.e., that as a matter of law it would be impossible for Plaintiff to prevail on this claim. The Court stated that since the Constitution requires no formal procedure, any opportunity Plaintiff had to prove the falsity of the charges against him prior to termination would seem to be sufficient. *Chilingirian v. Boris,* 882 F.2d 200, 205–206 (6th Cir.1989). However, as already explained, it was unclear whether Plaintiff was presented with a pre-termination opportunity to contest the charges.

**7.** Whether Defendants followed the CBA procedures does not have a direct bearing on the constitutional issues. Contractual rights and constitutional rights must be analyzed separately, *Barber v. City of Salem, Ohio,* 953 F.2d 232, 240 (6th Cir.1992), and rights conferred to an employee in a union collective bargaining agreement do not attain constitutional status, *Purisch v. Tennessee Technological Univ.,* 76 F.3d 1414, 1421–1424 (6th Cir. 1996). In other words, Defendants could have directly followed the procedures in both Article 7 and Article 19 yet there still may *not be* constitutionally sufficient due process. On the other hand, Defendants could have completely foregone the grievance procedures set out in the CBA and, although this may be a contractual violation of the CBA, not violated Plaintiff's right to procedural due process under the Constitution.

*Park,* 901 F.2d 491, 494 (6th Cir.1990). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487.

The pre-termination process need not be elaborate, and the amount of process depends, in part, on the importance of the competing interests at stake. *Id.* at 542, 105 S.Ct. 1487; *see also FDIC v. Mallen,* 486 U.S. 230, 240, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The specific dictates of due process are determined by considering factors such as the employee's interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination. *See Loudermill,* 470 U.S. at 542–43, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

■ Here Plaintiff received notice of the pending termination when he was served with the Action Notice. The only question is whether Plaintiff had an "opportunity to be heard" before his discipline—an explanation of the employer's evidence and an opportunity to present his side of the story. *Id.* at 542, 105 S.Ct. 1487. Plaintiff did have an opportunity to explain his side of the incident immediately after it occurred and then wrote his synopsis of events in his extraordinary incident report. Lt. Green's June 18 letter suspended Plaintiff pending a Corrections Department investigation and set the date for an administrative hearing. The original Action Notice, served on June 19, explained the charges with great specificity and also detailed which actions violated specific provisions of the CBA.[8] Defendants were not constitutionally required to share their internal investigation or include Plaintiff's input in such an investigation. *See Parks v. City of Chattanooga,* No. 01–6543, 2003 WL 21674749, at *7, 74 Fed.Appx. 432, 442–443 (6th Cir. July 16, 2003).

■ Plaintiff's own recollection of the June 21 disciplinary action meeting is that he was instructed to sign the Action Notice and told that he would be escorted from the building. The report of the incident was read to him. Plaintiff asked for per-

---

**8.** In Plaintiff's response he argues that the *Corrections Policy 10.34 Use of Force* cited in the June 19, 2002 Action Notice was technically not effective until September 2002—well after the date of Plaintiff's termination on June 21, 2002. Plaintiff argues that the Corrections should not have used this 2002 Policy to discipline him because it was not available for his review at the time of the incident that led to the disciplinary action. Therefore, Plaintiff asserts he was denied due process because he was denied an opportunity to know and understand that of which he is accused of being in violation. The Action Notice issued to Plaintiff cited to sections of the *Corrections Policy 10.34 Use of Force,* but the Action Notice does not cite any effective date of the policy. The Action Notice cites to specific policy sections and subsections violated by Plaintiff that correlate to the then ineffective September 2002 policy, but it goes on to describe the violations without specific citations in the section entitled "A brief description of the violation," which repeats 10.34 Use of Force policy language present in all issuances of the Use of Force policy. Despite the 2002 policy adding some statutory language and re-numbering some of the paragraphs of the 1997 policy, the substantive provisions regarding the use of force only as necessary to control an inmate and the levels of use of force remain the same. The Action Notice read to Plaintiff on June 21 set out the substantive provisions of the Use of Force policy that Plaintiff was accused of violating, regardless of whether the sections cited were technically from a policy draft under revision. Plaintiff received adequate notice of the Use of Force policy provisions he violated, as well as notice of how his actions and omissions during the inmate incident violated that policy.

mission to speak. He spoke briefly and apologized for his actions, stating that he had no intention of inflicting injury on the inmate. Plaintiff asserts that even though he spoke about his case, he was never given a chance to clarify any questions, fix any discrepancies of his report, or to speak on his own behalf. Nevertheless, Plaintiff did have an opportunity to speak at the pre-termination hearing, even if briefly. Pre-termination due process requires only that an employee have the opportunity to respond after being confronted, regardless if the employee fails to take the opportunity or put it to its best and intended use. See *Buckner,* 901 F.2d at 496.

The application of *Loudermill* requires the Court to balance the competing interests of the government in terminating an unsatisfactory employee and the employee in retaining his property right in a job. 470 U.S. at 546, 105 S.Ct. 1487. The government has an interest in the abbreviated pre-termination process. See *Morrison v. Warren,* 375 F.3d 468, 476 (6th Cir.2004). Plaintiff was charged with protecting citizens, the government's interest in effective law enforcement is extremely high, and the need to replace officers who are using unnecessary excessive force against inmates is obvious. *Id.* Defendants' interest in efficiently employing safe and effective law enforcement balances Plaintiff's interest in reinstatement or less discipline, particularly when there was actual evidence of excessive force on video and Plaintiff was given multi-levels of disciplinary action. *Id.*

The purpose of a pre-termination hearing—to assure that there are reasonable grounds to support the termination—was assured by Defendants' multi-tier level of pre-termination review of the incident.

Plaintiff had an initial discussion with his immediate supervisor; he provided a synopsis of the event in his "extraordinary" incident report; the staff reviewed a videotaped surveillance of the incident before Plaintiff was put on "no inmate" duty; Lt. Green reviewed the video before placing Plaintiff on suspension pending the Corrections' investigation; and Plaintiff had a disciplinary action meeting, with his union steward present, after notice of disciplinary action pursuant to the Action Notice. Even though Defendants may have had discretion *not* to terminate Plaintiff, that does not mean that Plaintiff is entitled to unlimited opportunities for argument. See *FDIC,* 486 U.S. at 234–235, 108 S.Ct. 1780. Instead, only *some* meaningful opportunity to invoke the discretion of the decision maker needed to be provided. See *Loudermill,* 470 U.S. at 543, 105 S.Ct. 1487; *see also Gilbert v. Homar,* 520 U.S. 924, 934, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Plaintiff received that opportunity.

The adequacy of pre-termination due process is not completely separable from the extent of post-termination remedies available. The availability of post-deprivation remedies allows for an even less formal pre-termination hearing. See *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 409 (6th Cir.1992); *see also Leary v. Daeschner,* 228 F.3d 729, 743 (6th Cir.2000). The abbreviated pre-termination hearing, or an "initial check against mistaken decisions," is all that is necessary where an employee is provided with a full post-termination hearing that is substantially more meaningful. See *Mitchell v. Fankhauser,* 375 F.3d 477, 481 (6th Cir. 2004). The CBA provides comprehensive post-termination mediation, arbitration, and other post-discipline procedures that provide a "meaningful" post-termination process.[9] The availability of such a system

---

**9.** Article 7, Section 4(B), Step 2, provides for mediation if the employee is not satisfied with the Chief of Corrections' response. Step 3 goes on to discuss the next step if the media-

tor does not come to a successful settlement, which includes arbitration if the Union so desires.

of post-termination procedures that includes arbitration, coupled with a pre-termination right of reply hearing, provides an employee with all the process due. *See Farhat v. Jopke,* 370 F.3d 580, 596 (6th Cir.2004). That an employee fails to take advantage of such post-termination processes is irrelevant. The adequacy of pre-termination procedures is determined by the *availability* of more elaborate post-termination review. *Id.; see also Parks,* 2003 WL 21674749 at *7, 74 Fed.Appx. at 442. Inasmuch as Plaintiff received notice of the charges against him and was afforded an opportunity to rebut them, the pre-termination hearing satisfies constitutional requirements. *See Morrison,* 375 F.3d 468, 474–75. Therefore, the Court finds that Plaintiff was given all the pre-termination process required by the Fourteenth Amendment.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendants have moved for summary judgment on all of Plaintiff's remaining claims. The Court has considered the evidence and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants motion shall be SUSTAINED and all of Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.