## NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2018 CA 1167

## JOHNETTE MARTIN

## VERSUS

## DEPARTMENT OF REVENUE

Judgment Rendered: **JUL 3 1 2019**

* * * * * * *

On Appeal from the State Civil Service Commission,
State of Louisiana
No. 18014

The Honorable David Duplantier, Chairman;
D. Scott Hughes, Vice-Chairman;
John McLure, G. Lee Griffin, Ronald M. Carrere, Jr.,
C. Pete Fremin, and Jo Ann Nixon, Members

* * * * * * *

Johnette Martin
Baton Rouge, Louisiana

In Proper Person

Mary Ann White
Baton Rouge, Louisiana

Attorney for Defendant/Appellee,
Department of Revenue

Adrienne Bordelon
Baton Rouge, Louisiana

Attorney for Byron P. Decoteau, Jr.,
Director, Department of State Civil
Service

* * * * * * *

**BEFORE: GUIDRY, THERIOT, AND PENZATO, JJ.**

Penzato, J. concur.

J. Theriot agrees with result only.

**PENZATO, J.**

Johnette Martin appeals a decision of the Louisiana Civil Service Commission ("Commission") upholding a three-day suspension without pay. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Martin has been employed by the Louisiana Department of Revenue ("LDR") since 2004 and serves with permanent status as an Attorney 3 in the legal division. On January 21, 2015, Tim Barfield, Secretary of LDR, issued a discipline letter to Ms. Martin suspending her without pay for three workdays for her insubordination that occurred as a result of her continuously engaging in unprofessional and disrespectful conduct. The January 21, 2015 discipline letter outlined the unprofessional and disrespectful behaviors that formed the basis of the insubordination for which Ms. Martin was disciplined:

1. On December 3, 2013, Ms. Martin was issued a formal letter of instruction wherein she was advised that her behavior during an October 8, 2013 meeting was observed by Secretary Barfield and found to be dissatisfactory.[1]

2. Around August 28, 2014, Secretary Barfield admonished Ms. Martin by e-mail for exhibiting disrespectful and unprofessional conduct at a litigation meeting.

3. On October 9, 2014, Ms. Martin's manager received a verbal complaint from the Director of Field Collection, Bryan Peters, regarding Ms. Martin's unprofessional and disrespectful treatment of him in a public area following an October 8, 2014 hearing at the Louisiana Board of Tax Appeals ("BTA") at which Mr. Peters attended as a witness at Ms. Martin's request.

4. On November 7, 2014, Ms. Martin approached Joseph Vaughn, another LDR employee not in Ms. Martin's chain of command, at the building's elevator and inquired about recent personnel action taken against her.

_____

[1] The letter of instruction is dated November 20, 2013, and is referred to herein by that date.

2

Ms. Martin appealed her suspension to the Commission. The matter was heard before a referee over the course of two days, December 10, 2015, and June 6, 2016.

At the conclusion of the hearing on June 6, 2016, Ms. Martin raised an objection to the November 20, 2013 letter of instruction, arguing that it was stale, particularly considering that on August 26, 2014, Ms. Martin received a performance evaluation of "exceptional."[2] The referee agreed to hold the record open for post-hearing memoranda regarding the staleness of the November 20, 2013 letter of instruction, allowing Ms. Martin until July 8, 2016, to file a post-hearing memorandum and LDR until August 12, 2016, to respond.

On July 8, 2016, Ms. Martin filed her post-hearing memorandum. LDR filed its post-hearing memorandum on August 12, 2016. LDR also filed a motion to strike, contending that Ms. Martin's memorandum exceeded the scope of the referee's order that the post-hearing memoranda address only the staleness of the November 20, 2013 letter of instruction. On August 18, 2016, at Ms. Martin's request, she was granted until September 16, 2016, to file a response to LDR's motion to strike.

Thereafter, by order dated August 24, 2016, the matter was placed on hold because the referee was injured in the "Great Flood of 2016." Ms. Martin filed an opposition to LDR's motion to strike on September 16, 2016, and on October 4, 2016, LDR filed a reply brief in further support of its motion to strike.

There was no further action in the matter until May 1, 2018, when the referee issued a ruling that the November 20, 2013 letter of instruction was not stale, especially in light of the fact that it was introduced into evidence merely for

---

[2] During the hearing, Ms. Martin objected to the introduction into evidence of the letter of instruction because her response was not attached. The referee sustained Ms. Martin's objection in part, and ruled that the letter of instruction would not be used for enhancement but would be considered as notice to Ms. Martin of her inappropriate behavior.

background purposes and for the purpose of showing that Ms. Martin was put on notice not to engage in inappropriate and unprofessional behavior in the future. The referee further ruled that he would not strike any portion of Ms. Martin's July 8, 2016 or September 16, 2016 brief, but that he would only consider those portions of the briefs that related to the issue of staleness of the November 20, 2013 letter of instruction. Finally, the referee ruled that the matter was considered submitted as of the date his ruling was mailed to the parties, and that a decision would be rendered in due course. A notice of decision was mailed to the parties on May 7, 2018.

On May 7, 2018, the referee issued his determination regarding Ms. Martin's three-day suspension without pay. The referee found that LDR proved cause for discipline with regard to the October 8, 2014 incident outside of the BTA hearing room but failed to prove cause for discipline for Ms. Martin's November 5, 2014 conversation with Mr. Vaughn. The referee concluded that LDR proved that Ms. Martin was rude, disrespectful, and unprofessional to Mr. Peters and Ursula Domingue, an LDR employee who, along with Mr. Peters, was a witness in the taxpayer appeal case, all to the detriment of the state service, and that a three-day suspension was commensurate with the offense. Ms. Martin appealed the decisions rendered on May 1, 2018 and May 7, 2018.

Following oral argument, Ms. Martin requested and was given time to file a supplemental brief. LDR filed a motion for permission to file a response to Ms. Martin's supplemental brief, which was granted.

## ASSIGNMENTS OF ERROR

Ms. Martin contends that the referee erred in upholding the appointing authority's disciplinary action in the following respects:

1. It was reversible error for the referee to permit Secretary Barfield to testify to matters beyond the reasons which formed the disciplinary action, i.e., the "four-corners rule."

4

2. It was reversible error for the referee to allow the letter of instruction to be introduced into the record without compliance with CSR 12.9(b).

3. It was reversible error to introduce the stale letter of instruction.

4. It was reversible error to characterize the letter of instruction as "notice" for the purpose of allowing its introduction as a part of discipline.

5. It was reversible error for the referee to permit Ms. Domingue to testify to unsupported allegations of her interactions with Ms. Martin for matters outside of the "four-corners rule."

6. It was reversible error for the referee to use the letter of instruction to support the allegation of "insubordination."

7. It was reversible error for the referee to give greater weight to the testimony of two LDR witnesses and disregard the testimony of Ms. Martin's eye witness.

8. It was reversible error for the referee to accept the incompetent testimony of Mr. Peters and Ms. Domingue.

9. It was reversible error for the referee to refuse to admit Ms. Martin's proffered exhibits, Martin Ex. #5, Martin Ex. #9, and especially Martin Ex. #17, Affidavit of Joe Stevenson, and Martin Ex. #19, the tape recording of Tammalaya Tucker-Aguillard.

10. It was reversible error for the referee to deem the matter submitted on the date that the ruling on the admissibility of the letter of instruction was issued.

11. Ms. Martin's due process rights were violated by the amount of time it took the referee to render a decision in this matter.

## DISCUSSION

The following testimony was elicited during the hearing regarding the facts concerning the October 8, 2014 incident that led to Ms. Martin's disciplinary suspension.

Mr. Peters testified that on October 8, 2014, he was working with Ms. Martin on a taxpayer appeal to the BTA. He was sequestered and waiting outside of the courtroom. According to Mr. Peters, following the hearing, Ms. Martin yelled at him outside of the courtroom, blaming him for the loss of the case

5

because he did not share sufficient information with her. Ms. Martin continued to discuss the incident with Mr. Peters as they left the building. On October 15, 2014, Mr. Peters sent an e-mail to Ms. Martin's supervisor, Monica Doss, to document the incident, advising that he did not feel the conversation was appropriate.

Ms. Domingue also testified at the hearing. She stated that she was waiting outside of the courtroom with Mr. Peters when Ms. Martin exited the courtroom and, in an elevated voice, told Mr. Peters that it was his fault that she lost the case. Ms. Domingue explained that during hearings, a BTA administrator sits at a desk located outside the courtroom in the area where she and Mr. Peters were waiting. Ms. Domingue could not recall if the administrator, Tammalaya Tucker-Aguillard, was present during the time that Ms. Martin was talking to Mr. Peters in an elevated voice.

Ms. Martin testified that following the October 8, 2014 hearing, she exited the courtroom into the waiting area, which was empty except for Mr. Peters, Ms. Domingue, and Ms. Tucker-Aguillard. She approached them and they asked about the hearing. Ms. Martin told them she did not think it went well, and she speculated that Mr. Peters realized it was because of his testimony. According to Ms. Martin, Mr. Peters followed her to the elevator and stated that she was mad because he had been sequestered. Ms. Martin testified that she told Mr. Peters she was not mad, nor was she mad at him. She denied that she raised her voice to him or Ms. Domingue. Her impression was that Mr. Peters felt a little embarrassed and felt badly because he had let Ms. Martin down.

Ms. Tucker-Aguillard was responsible for answering the phones outside of the courtroom at the BTA at the time of the October 8, 2014 incident. She testified that she did not specifically remember that day, did not recall anything out of the ordinary happening, nor did she recall Ms. Martin yelling at anyone. Ms. Tucker-

6

Aguillard further testified that it was possible that she was away from her desk during the October 8, 2014 incident.

In the May 7, 2018 decision, the referee concluded that Ms. Martin yelled at Mr. Peters and Ms. Domingue, blamed Mr. Peters for losing the BTA case, and continued to yell at and belittle Mr. Peters even when a member of the public approached them. He found that the detailed and emotional testimony of both Mr. Peters and Ms. Domingue was much more credible than the self-serving testimony of Ms. Martin, and that Ms. Martin failed to produce any credible evidence to support the assertion that either Mr. Peters or Ms. Domingue had any reason to make up such a factually detailed story about her. The referee also found that Ms. Martin's defense that Ms. Tucker-Aguillard viewed the entire incident and could attest that Ms. Martin did not raise her voice at any time was not persuasive. He noted that Ms. Tucker-Aguillard conceded that she may not have been at work on October 8, 2014, and that she may have been away from her desk attending to other matters or on a restroom break at the time of the incident. Therefore, he concluded that her testimony did not contradict the credible testimony of Mr. Peters and Ms. Domingue.

The referee further found that Ms. Martin's unprofessional and rude behavior was clearly disruptive to the workplace and detrimental to the state service, noting that both Mr. Peters and Ms. Domingue testified that Ms. Martin's loud and abusive behavior caused them much grief and they did not want to be anywhere near her after this incident. The referee found that Ms. Martin knew better than to engage in this type of behavior, as she had been placed on notice twice as to her inappropriate behavior prior to October 8, 2014. He concluded that LDR had proved cause for discipline against Ms. Martin in connection with the October 8, 2014 incident, and that the penalty imposed, a three-day suspension, was commensurate with the offense.

In civil service disciplinary cases, the factual conclusions of the referee and Commission are subject to the manifest error standard of review, meaning that the factual determinations will be reversed only if the appellate court finds that a reasonable basis does not exist for the Commission's finding and the record establishes the finding is clearly wrong. *Cole v. Division of Administration*, 2014-0936 (La. App. 1 Cir. 1/26/15), 170 So. 3d 180, 184, writ not considered, 2015-0401 (La. 5/1/15), 169 So. 3d 367. In evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. An arbitrary conclusion is one that disregards evidence or the proper weight thereof; and a capricious conclusion is when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. *Paulin v. Department of Health & Hospitals, Office of Behavioral Health*, 2013-1916 (La. App. 1 Cir. 6/6/14), 146 So. 3d 264, 268. Each case must be decided on its own facts. Reviewing courts should not second guess the appointing authority's decision but only intervene when decisions are arbitrary and capricious or characterized by an abuse of discretion. *Cole*, 170 So. 3d at 184-85.

Ms. Martin argues that the Louisiana Administrative Procedure Act ("LAPA") provides for *de novo* review. However, in *Ward v. Department of Public Safety & Corrections*, 97-1109, 97-1110 (La. App. 1 Cir. 9/18/98), 718 So. 2d 1042, 1044, this court concluded that the LAPA standards of review do not apply to review of decisions of the Commission, because judicial review is performed by the First Circuit Court of Appeal, not by a district court.

Ms. Martin also argues in her supplemental brief that this court must conduct a *de novo* review because the referee's conduct interdicted the fact finding process and created substantial evidentiary errors that affected the final decision. Because

8

a finding of an evidentiary error may affect the applicable standard of review, in that this court must conduct a *de novo* review if the trial court commits an evidentiary error that interdicts the fact-finding process, alleged evidentiary errors must be addressed first on appeal. *Devall v. Baton Rouge Fire Department*, 2007-0156 (La. App. 1 Cir. 11/2/07), 979 So. 2d 500, 502. A *de novo* review should not be undertaken for every evidentiary error but should be limited to consequential errors, meaning those that prejudiced or tainted the verdict rendered. *Lee v. Louisiana Board of Trustees for State Colleges*, 2017-1433 (La. App. 1 Cir. 3/13/19), ___ So.3d ___. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731, 735.

**Alleged Evidentiary Errors**

**Admission of testimony outside of the "four-corners rule" (Assignments of error numbers one and five)**

In assignments of error numbers one and five, Ms. Martin contends that it was reversible error for the referee to permit testimony of allegations not contained in the January 21, 2015 discipline letter outside of the "four-corners rule" of CSR 13.19(m).

Louisiana Civil Service Rule 13.19(m) provides that:

> [T]he charges expressed in writing by the appointing authority as cause for demotion, suspension, dismissal, or other action, shall not be accepted as prima facie true. Evidence shall not be received from an appointing authority to supplement or enlarge the charges contained in such written document. The appellant may rebut any proof offered by the appointing authority in support of the charges.

Ms. Martin objected to testimony from Secretary Barfield regarding a meeting he had with Ms. Martin in 2013 in which she brought a stack of her performance evaluations and expressed frustration that her career path was not proceeding in the way she wanted. Ms. Martin also objected to testimony from Ms. Domingue that she was used to Ms. Martin yelling because prior to the

9

October 8, 2014 hearing that prompted the disciplinary action, Ms. Martin had yelled directly at her at least five times. The referee allowed the testimony of both Secretary Barfield and Ms. Domingue as general history.

The referee did not receive this testimony to supplement or enlarge the charges contained in the January 21, 2015 disciplinary letter. Thus, this testimony is not prohibited by CSR 13.19(m). We do not find that the referee erred in allowing this testimony for background purposes. Assignments of error one and five are without merit.

**November 20, 2013 letter of instruction (Assignments of error numbers two, three, four, and six)**

In assignment of error number two, Ms. Martin contends that it was reversible error for the referee to allow the November 20, 2013 letter of instruction to be introduced into the record because her response was not attached, as required by CSR 12.9(b). In assignment of error number three, Ms. Martin contends that it was reversible error for the referee to allow the November 20, 2013 letter of instruction to be introduced into the record because it was stale. In assignments of error numbers four and six, Ms. Martin contends that it was reversible error for the referee to allow the November 20, 2013 letter of instruction to be introduced into the record as "notice" and to use it to support the allegation of "insubordination."

Secretary Barfield testified at the hearing that he was prompted to propose discipline because of Mr. Peters' and Ms. Domingue's complaints that Ms. Martin acted unprofessionally after the October 8, 2014 hearing. According to Secretary Barfield, this episode was another in a series of events where Ms. Martin was unprofessional, raised her voice, and carried herself in a way that was detrimental to LDR. By way of background, Secretary Barfield recounted an incident where he personally observed Ms. Martin raise her voice in an October 8, 2013 meeting with a taxpayer, the taxpayer's representative, and a senator. As a result of

Secretary Barfield's observation of Ms. Martin's lack of professionalism in that meeting, a letter of instruction was issued to Ms. Martin on December 3, 2013. The letter of instruction was referenced in and attached as an exhibit to the January 21, 2015 discipline letter. However, at the hearing, Ms. Martin objected to the introduction into evidence of the letter of instruction because her response was not attached. The referee sustained Ms. Martin's objection in part and ruled that the letter of instruction would not be used for enhancement but would be considered as notice to Ms. Martin of her inappropriate behavior.

Louisiana Civil Service Rule 12.9, entitled "Improvement Letters," provides:

(a) An appointing authority may issue letters (such as warnings, counseling, coaching, reprimands, supervisory plans, etc.) to attempt to improve an employee's conduct.

(b) An employee may respond in writing to an improvement letter. The employee's response must be attached to each copy of the letter kept by the agency.

(c) If the same or similar conduct recurs, an improvement letter can be used to support the severity of future discipline, but only if the letter advised the employee that the letter would be used for this purpose and advised the employee of his right to respond.

(d) An improvement letter is not discipline, is only appealable under Rule 13.10(b) or (c), and may not be included in any publicly accessible personnel record until used to support future discipline. [Emphasis in original.]

The November 20, 2013 letter of instruction advised Ms. Martin that the letter could be used to support the severity of future discipline and of her right to respond, as required by CSR 12.9(c). Secretary Barfield testified that he recalled receiving a response from Ms. Martin to the November 20, 2013 letter of instruction and discussing it with Ms. Martin's boss at the time. He further testified that a human resources representative was unable to locate the letter in Ms. Martin's file. Although her response was not introduced into evidence, Ms. Martin testified at the hearing and presented her version of the events of the

11

October 8, 2013 meeting that was the subject of the November 20, 2013 letter of instruction.

In arguing that the November 20, 2013 letter of instruction was stale and should not have been admitted or used in any context, Ms. Martin relied upon *Nicholas v. Housing Authority of New Orleans*, 477 So. 2d 1187, 1191 (La. App. 1 Cir. 1985), writ denied, 480 So. 2d 744 (La. 1986), wherein this court concluded that incidents occurring before a satisfactory performance evaluation could not form the basis for a future disciplinary proceeding.

Ms. Martin introduced into evidence a performance evaluation conducted on August 28, 2014 that provided an overall evaluation of "Exceptional." The performance evaluation form states that the performance year being evaluated was July 1, 2013 through June 30, 2014, a period that does include the October 8, 2013 meeting that was the subject of the November 20, 2013 letter of instruction. However, Secretary Barfield testified that the performance evaluation did not include an evaluation of behavioral issues. The evaluation factors listed on the performance evaluation form are: time and attendance; professional development – training, CLE, case presentation; and customer service – average case resolution time and average case closures per month. Moreover, as discussed above, the November 20, 2013 letter of instruction was not considered by the referee as the basis for the three-day suspension.

Thus, we find that neither CSR 12.9(c) nor the August 28, 2014 performance evaluation precluded the introduction into evidence of the November 20, 2013 letter of instruction for background purposes and for the purpose of showing that Ms. Martin was put on notice not to engage in inappropriate and unprofessional behavior in the future.

LDR is permitted to produce evidence to substantiate the charges made in its disciplinary action letter. See *Appeal of Kennedy*, 442 So. 2d 566, 569 (La. App. 1

12

Cir. 1983). Accordingly, we do not find any clear error or abuse of discretion in the decision of the referee to admit the November 20, 2013 letter of instruction to be introduced into the record to support the allegation that Ms. Martin continuously engaged in unprofessional and disrespectful conduct after being placed on notice.

Assignments of error two, three, four, and six are without merit.

**Admission of incompetent testimony (Assignment of error number eight)**

In assignment of error number eight, Ms. Martin complains that the referee accepted the incompetent testimony of Mr. Peters and Ms. Domingue. Ms. Martin argues that Mr. Peters and Ms. Domingue were untruthful in their written statements, and that neither of them knew the procedural implications of sequestration. Ms. Martin argues that Ms. Domingue's testimony was self-serving and therefore not competent to sustain the findings of fact made by the referee.

Strict compliance with the Rules of Evidence in administrative hearings is not mandatory. *Dundy v. Louisiana State University in Baton Rouge*, 394 So. 2d 650, 653 (La. App. 1 Cir. 1980). Nonetheless, the findings of the Commission must be based on competent evidence. *Id.* The basic concept of competency is that a witness may not testify to a fact unless a foundation is laid from which the trier of fact could conclude that the witness has personal knowledge of that fact. La. C.E. art. 602. If a witness lacks memory of events he or she witnessed, the facts may be recaptured by "jogging" the witness' memory, either prior to or while the witness is testifying. La. C.E. art. 612. *Cousin v. Slidell Memorial Hospital*, 2002-2600 (La. App. 1 Cir. 9/26/03), 857 So. 2d 576, 580-81.

Ms. Martin has not identified any issues with Mr. Peters' and Ms. Domingue's competency to testify as to events in which they were involved.

13

Rather, she contends that their testimony was untruthful and unreliable.[3]  This assignment of error has no merit.

**Refusal to admit proffered exhibits (Assignment of error number nine)**

In assignment of error number nine, Ms. Martin contends that it was reversible error for the referee to refuse to admit several of Ms. Martin's proffered exhibits.

Ms. Martin's proffered exhibit number five consists of five letters of recommendation dated February 27, 2013 and March 5, 2013.  Ms. Martin sought to introduce the letters in connection with Mr. Vaughn's testimony to rebut a perceived inference that other employees had a negative opinion of Ms. Martin. The referee ruled that the letters were irrelevant.

Ms. Martin's proffered exhibit number nine is a letter dated June 3, 2014, from David Newell and an e-mail from Secretary Barfield to Mr. Newell in response.  Ms. Martin sought to introduce the letter and e-mail to contradict what she described as "Secretary Barfield's overwhelming and continuous discussion of [her] as behaviorally challenged." The referee sustained LDR's objection to the evidence based upon relevance and lack of foundation.

As discussed above, Ms. Martin was suspended for her rude, disrespectful, and unprofessional behavior following the October 8, 2014 hearing.  We do not find that evidence of other people's positive opinions of Ms. Martin's work in general is relevant to the referee's finding that her suspension as a result of the October 8, 2014 incident was warranted.  We do not find any clear error or abuse of discretion in the referee's rulings in connection with proffered exhibits number five and nine.

---

[3] Ms. Martin's argument regarding the untruthfulness, unreliability, and weight afforded Mr. Peters' and Ms. Domingue's testimony is discussed below in connection with assignment of error number seven.

Ms. Martin's proffered exhibit number seventeen is an affidavit of Joe Stevenson, who attested that he was Ms. Tucker-Aguillard's supervisor while she was employed at the BTA, and that her duties required her to be at the reception station in the public reception area of the office during hearings. LDR objected to the affidavit as uncorroborated hearsay, and the referee sustained the objection.

As noted above, the usual rules of evidence need not apply in administrative hearings, and thus hearsay may be admitted and can be used, along with other competent evidence, to reach a true factual finding. *Superior Bar & Grill, Inc. v. State of Louisiana, through the Department of Public Safety and Corrections*, 94-1879 (La. App. 1 Cir. 5/5/95), 655 So. 2d 468, 470. However, factual findings cannot be based solely on incompetent evidence. *Id.* Ms. Martin failed to call Mr. Stevenson to testify, and the referee was precluded from making a factual finding based solely upon Mr. Stevenson's uncorroborated affidavit. Thus, we do not find any clear error or abuse of discretion in the referee's exclusion of the affidavit.

Ms. Martin's proffered exhibit number nineteen is a recording of an alleged telephone conversation between Ms. Martin and Ms. Tucker-Aguillard that Ms. Martin attempted to introduce in connection with her own testimony as rebuttal to LDR's witnesses. LDR objected to the recording as hearsay. The referee sustained the objection. Ms. Martin had the opportunity to cross-examine LDR's witnesses, and Ms. Tucker-Aguillard testified at the hearing. We do not find any clear error or abuse of discretion in the referee's exclusion of the recording.

Accordingly, we conclude that the exclusion of the proffered exhibits was not erroneous.

### Review of Commission's Decision

Since we find no evidentiary errors, we will not conduct a *de novo* review. Rather, we will review the referee's factual determinations, including the evaluation of witness testimony, under the manifest error standard of review. See

*Cole*, 170 So. 3d at 184-85. In reviewing the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. *Id.* We also address assignment of error number seven, whereby Ms. Martin argues that it was reversible error for the referee to give greater weight to the testimony of the LDR witnesses and disregard the testimony of her eyewitness.

In applying the manifest error standard of review, the appellate court must determine whether the fact finder's conclusions are reasonable, not whether the trier of fact was right or wrong. *Guichard Operating Co., LLC v. Porche*, 2015-1942 (La. App. 1 Cir. 1/5/17), 212 So. 3d 701, 706. Where there are two permissible views of the evidence, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. Even where the appellate court is convinced it would have weighed the evidence differently if it had been sitting as trier of fact, the court of appeal may not reverse if the fact finder's findings are reasonable in light of the record reviewed in its entirety. *Id.* When findings are based on a credibility determination, a fact finder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous. *Id.*

In this case, the referee thoroughly assessed the credibility of Mr. Peters, Ms. Domingue, and Ms. Martin, and concluded that the detailed and emotional testimony of Mr. Peters and Ms. Domingue regarding the October 8, 2014 incident was much more credible than Ms. Martin's self-serving testimony. Moreover, as noted above, the referee did not disregard the testimony of Ms. Tucker-Aguillard, but rather considered her testimony that she may have been away from her desk at the time of the incident. Where, as here, the referee's factual determination is based on determinations regarding the credibility of witnesses, the manifest error standard of review demands great deference to the trier of fact's findings, for only

16

the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. See *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989).

After reviewing the record and giving due deference to the referee's credibility determinations, we find that the referee's determination that Ms. Martin was rude, disrespectful, and unprofessional to Mr. Peters and Ms. Domingue is reasonably supported by the record and is not manifestly erroneous. We further find that the referee's conclusion that a three-day suspension was commensurate with the offense was not arbitrary, capricious, or characterized by an abuse of discretion. See *Cole*, 170 So. 3d at 184-85.

**Timeliness of Decision**

In assignment of error number ten, Ms. Martin contends that it was a gross abuse of discretion for the referee to deem the matter submitted on the date that the ruling on the admissibility of the letter of instruction was issued. In assignment of error number eleven, Ms. Martin contends that her due process rights were violated by the delay in the disposition of her appeal.

Ms. Martin acknowledges that there is no deadline for Civil Service Commission referees to render a decision. However, under the holding of the United States Supreme Court in *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), the principles of due process require that she be provided with a prompt post-suspension hearing. Although there is a point at which an unjustified delay in completing a post-deprivation proceeding "would become a constitutional violation," the significance of such a delay cannot be evaluated in a vacuum. *Federal Deposit Insurance Corporation v. Mallen*, 486 U.S. 230, 242, 108 S. Ct. 1780, 1788, 100 L. Ed. 2d 265 (1988) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547, 105 S.Ct. 1487, 1496, 84 L. Ed. 2d 494 (1985)). In determining how long a delay is justified in affording a post-suspension hearing

17

and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered for the delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken. *Mallen*, 486 U.S. at 242, 108 S. Ct. at 1788.

Ms. Martin served the three-day suspension but did not lose her job. She contends that she had a private interest in obtaining a review of the evidence at a time close to the actual evidence being received. She speculates that the delay affected the referee's ability to correctly, accurately, and properly recall the demeanor of the witnesses and the conflicts in their testimony but presents no evidence of harm occasioned by the delay.

In this case, the initial delay in the referee's decision was the result of Ms. Martin's own actions in requesting an opportunity to further brief issues in connection with the matter. Thereafter, the matter was delayed pursuant to a valid order placing it on hold because the referee was injured in the "Great Flood of 2016."

We have found that the referee's decision denying Ms. Martin's appeal of her three-day suspension was not arbitrary and capricious or characterized by an abuse of discretion. Because we find that the interim decision was not mistaken, we find that Ms. Martin did not sustain any unconstitutional deprivation in connection with the delay and was denied no rights. See *Burnett v. Department of Health and Human Resources, E.A. Conway Memorial Hosp.*, 425 So. 2d 245, 249 (La. App. 1 Cir. 1982).

Assignments of error numbers ten and eleven have no merit.

18

## CONCLUSION

Accordingly, we find that the action of the Louisiana Civil Service Commission in upholding Johnette Martin's three day suspension without pay is affirmed. All costs of this appeal are assessed against Johnette Martin.

**AFFIRMED.**